STATE of Minnesota, Appellant,

v.

Douglas Alan DETTMAN, Respondent.

No. A04–975.

Supreme Court of Minnesota.

Aug. 10, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmstead County Attorney, Daniel Paul Haugrud Reiff, Assistant County Attorney, Rochester, MN, for Appellant.

John M. Stuart, State Public Defender, Benjamin J. Butler, Steven P. Russett, Richard Andrew Schmitz, Assistant Public Defenders, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

Respondent Douglas Alan Dettman pleaded guilty to one count of first-degree criminal sexual conduct. The district court sentenced him to 216 months in prison, a 72–month upward departure from the presumptive sentence. *See* Minn.Stat. § 609.342, subd. 2(b) (2004). While his case was pending on appeal, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Based on *Blakely,* the court of appeals reversed Dettman's sentence, holding that the upward sentencing departure was unconstitutional because it was based on judicial findings of fact. *State v. Dettman,* 696 N.W.2d 812, 813, 816 (Minn.App.2005). The court concluded that Dettman's statements at his plea hearing could not constitutionally be used to support the departure "[b]ecause Dettman did not expressly waive his right to a jury determination of any fact supporting an upward durational departure." *Id.* at 815. We affirm the court of appeals' decision, holding that the upward departure violated Dettman's Sixth Amendment right to a jury determination of facts supporting an upward durational departure. Because Dettman's statements were not accompanied by an express, knowing, voluntary, and intelligent waiver of this right, they cannot be used to support the upward departure.

The facts giving rise to this appeal are relatively straightforward. In the late hours of May 12 or very early on May 13, 2003, Dettman called L.L.B. on the phone and asked her to come to his apartment to assist her boyfriend, who Dettman said was in trouble. When L.L.B. arrived at Dettman's apartment, Dettman told her that her boyfriend had gone to purchase cigarettes, and L.L.B. entered the apartment to wait for his return. Dettman then grabbed a piece of duct tape and attempted to cover L.L.B.'s mouth with it. When L.L.B. fought back, Dettman restrained her and told her to be quiet or he would cut her throat. Dettman then instructed L.L.B. to get undressed and get on his bed, where he penetrated her vaginally

with his fingers and put his mouth on her vagina. According to the criminal complaint, Dettman also told police that he ordered L.L.B. to sit on his face and urinate into his mouth. At this point, the attack was interrupted by the Rochester police, who had responded to a report of a woman screaming for help in Dettman's apartment. The police found L.L.B. naked on Dettman's bed with blood around her mouth. The police also found a folding knife in Dettman's pants pocket.

Dettman was arrested and charged with three counts of first-degree criminal sexual conduct and one count of kidnapping. On January 12, 2004, Dettman pleaded guilty to one count of first-degree criminal sexual conduct in exchange for dismissal of the other charges. At the plea hearing, the district court informed Dettman of his right to a jury trial on the issue of guilt, which he waived. Dettman then admitted luring L.L.B. to his apartment by telling her that her boyfriend was in trouble, performing multiple types of sexual penetration, and causing her to fear great bodily harm by threatening to slit her throat.

On March 1, 2004, the district court sentenced Dettman to 216 months in prison, a 72–month upward departure from the 144–month presumptive sentence provided in Minn.Stat. § 609.342, subd. 2(b). The court based the departure on the particular cruelty with which the offense was committed and the lasting psychological impact on the victim. With respect to particular cruelty, the court determined that Dettman (1) exploited his knowledge of L.L.B.'s relationship with her boyfriend to lure her to Dettman's apartment, (2) subjected L.L.B. to multiple forms of penetration, (3) planned and prepared for the assault by pre-cutting duct tape that he planned to use to silence L.L.B., and (4)

ordered L.L.B. to engage in especially repulsive acts.

Dettman appealed, and while his appeal was pending before the court of appeals, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Court reiterated its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that the Sixth Amendment requires that, other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed "statutory maximum" must be proved to a jury beyond a reasonable doubt. *Blakely*, 542 U.S. at 301–02, 124 S.Ct. 2531; *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Blakely* reformulated the definition of "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531. Thus, the rule established by the *Apprendi* line of cases is that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

At the court of appeals, Dettman argued that the upward departure in his case violated the rule announced in *Blakely* because the departure was based on facts found by the district court. Relying on *Blakely*, the court of appeals concluded that the upward departure violated Dettman's Sixth Amendment right to a jury determination of aggravating sentencing factors and reversed and remanded for resentencing. *Dettman*, 696 N.W.2d at 816. The court of appeals noted that the

"findings supporting the upward durational departure were made solely by the district court," and, under *Blakely*, Dettman was "entitled to a jury determination of any fact that increases the presumptive sentence." *Dettman*, 696 N.W.2d at 815. The court concluded that a defendant must make an express on-the-record waiver of his right to a jury determination of aggravating sentencing factors before his statements at a plea hearing may be used to enhance his sentence. *Id.* "Because Dettman did not expressly waive his right to a jury determination of any fact supporting an upward durational departure, his 'admissions' at the plea hearing should not be considered as such for purposes of the [admission] exception to the rule in *Blakely*." *Dettman*, 696 N.W.2d at 815. We granted the state's petition for review.

■ We have previously determined that *Blakely* announced a new rule of constitutional criminal procedure which applies to cases pending on direct review at the time *Blakely* was decided. *State v. Houston*, 702 N.W.2d 268, 273–74 (Minn. 2005); *O'Meara v. State*, 679 N.W.2d 334, 339 (Minn.2004). Because Dettman's direct appeal was pending before the court of appeals when *Blakely* was decided, the substantive rule of *Blakely* applies retroactively to Dettman's case. *See Houston*, 702 N.W.2d at 270, 274.

On appeal to this court, the state argues that Dettman forfeited appellate consideration of the alleged *Blakely* violation by failing to preserve the error at the district court. The state contends that most district court errors, if not properly preserved for appeal, are deemed forfeited and that any appellate review of the error must be under the plain error standard. In addition, the state argues that, irrespective of the standard of review, no *Blakely* error occurred in this case because Dettman admitted the facts necessary to support the sentencing departure at his plea hearing and in statements made to police, which were later incorporated into the complaint. This case thus presents two *Blakely*-related questions: (1) whether Dettman forfeited appellate review of his *Blakely* claim by failing to object on *Blakely* grounds at the district court; and (2) whether the upward sentencing departure may constitutionally be based on statements Dettman made at his plea hearing and statements attributed to him in the criminal complaint.

I.

■ We first address the state's contention that Dettman forfeited consideration on appeal of his *Blakely* claim because he failed to preserve the alleged *Blakely* error below. The state correctly notes that Dettman did not object at the district court to his sentence on the basis of a violation of his Sixth Amendment jury-trial right. Generally, a district court error not objected to at the district court is considered forfeited for purposes of appeal. *See, e.g., State v. Blanche*, 696 N.W.2d 351, 375 (Minn.2005); *State v. Blom*, 682 N.W.2d 578, 614 (Minn.2004). But here resolution of this question is controlled by our recent holding in *State v. Osborne*, 715 N.W.2d 436 (Minn.2006). In *Osborne*, we concluded that a defendant's failure to object on *Blakely* grounds at the district court does not forfeit appellate review of an alleged *Blakely* error. *Osborne*, 715 N.W.2d at 446. Accordingly, we hold that Dettman did not forfeit appellate review of the alleged *Blakely* error in this case.

II.

■ We now turn to the state's second argument—that no *Blakely* error occurred because Dettman admitted the facts used to enhance his sentence. The alleged

*Blakely* error in this case presents a constitutional question that we review de novo. *See State v. Barker,* 705 N.W.2d 768, 771 (Minn.2005).

From the *Apprendi* line of cases, it is clear that Dettman's sentence could not constitutionally have been enhanced, beyond the maximum sentence authorized by the facts established by his guilty plea, based on judicial findings of fact.[1] *See Blakely,* 542 U.S. at 303–05, 124 S.Ct. 2531; *State v. Shattuck,* 704 N.W.2d 131, 142–43 (Minn.2005). The district court's imposition of an upward departure was permissible only if the facts authorizing the departure were either found by a jury beyond a reasonable doubt or admitted by Dettman. *See Booker,* 543 U.S. at 244, 125 S.Ct. 738. Because it is undisputed that a jury did not find the aggravating factors used to enhance Dettman's sentence, the narrow issue before us is whether Dettman sufficiently admitted the facts authorizing the upward departure to satisfy the requirements of *Blakely.*

The state argues that Dettman admitted, both at his plea hearing and in police interrogation later incorporated into the complaint, facts supporting the upward departure, and therefore no *Blakely* error occurred. At his plea hearing, Dettman and his attorney had the following exchange:

Q. On May 12th or early May 13th did you place a phone call to a young woman with the initials L.L.B.?

A. Yes.

Q. And you asked her to come over to your apartment to help her boyfriend who was in trouble, is that correct?

A. Yes.

Q. She drove to your apartment and eventually came up to your apartment, is that correct?

A. Yes.

Q. When she got there her boyfriend was not at the apartment, is that correct?

A. Yes.

Q. You had told her that her boyfriend had gone out to get cigarettes, is that correct?

A. Yes.

\* \* \*

Q. You penetrated her vaginally with your fingers, is that correct?

A. Yes.

Q. You also put your mouth in her vaginal region, it that correct?

A. Yes.

In addition, Dettman made several statements to police that could support the district court's upward departure if they constitute admissions on which an upward departure may constitutionally be based. Dettman told police that he planned for the assault by precutting a strip of duct tape to muzzle L.L.B. and by arranging pillows on his bed where he planned to have her lie. Dettman also told police that he ordered L.L.B. to urinate into his mouth.

---

1. The presumptive 144-month sentence in Minn.Stat. § 609.342, subd. 2(b), is the maximum sentence authorized by the facts established by Dettman's guilty plea—that is, the facts necessary to establish the elements of the offense to which he pleaded guilty. Minn. Stat. § 609.342, subd. 2(b) (establishing a presumptive sentence of 144 months for first-degree criminal sexual conduct); *State v.* *Shattuck,* 704 N.W.2d 131, 141 (Minn.2005) (concluding that the presumptive sentence is the "statutory maximum" for *Blakely* purposes); *see also People v. Isaacks,* 133 P.3d 1190, 1193 (Colo.2006) (noting that, in cases involving a guilty plea, the right announced in *Blakely* extends "to all facts beyond those that establish the elements of the charged offense").

The state argues that these statements together constitute admissions supporting the district court's finding of particular cruelty, which the court based on Dettman's exploitation of his knowledge of L.L.B.'s relationship with her boyfriend to lure her to Dettman's apartment, his planning for the assault, his ordering L.L.B. to engage in especially repulsive acts, and the multiple forms of penetration. The state contends that *Blakely* does not require an express waiver of the right to a jury determination of aggravating sentencing factors before a defendant's admissions may be used to enhance his sentence. In opposition, Dettman argues that a knowing, voluntary, and intelligent waiver of that right must precede the use of a defendant's admissions to enhance his sentence, and, in the absence of such a waiver by Dettman, the upward departure in his case violates the Sixth Amendment. Dettman notes that he neither stipulated to the aggravating factors found nor consented to judicial fact finding on those issues.

The court of appeals concluded that a knowing, voluntary, and intelligent waiver of a defendant's Sixth Amendment right to a jury determination of facts supporting an upward sentencing departure is required before the defendant's statements may be used to enhance his sentence. *Dettman*, 696 N.W.2d at 815. Because Dettman did not expressly waive this right, the court held that his statements could not be used to enhance his sentence. *Id.*

In so holding, the court of appeals relied largely on an earlier court of appeals case, *State v. Hagen*, 690 N.W.2d 155 (Minn. App.2004). In *Hagen*, the court of appeals considered whether a defendant's statements at a sentencing hearing constituted admissions that could be used to enhance his sentence. *Id.* at 157–58. The court reasoned that "[t]he effect of a defendant's admission to an aggravating factor is to waive the defendant's constitutional right to a jury trial on the sentencing issue." *Id.* at 158. The court observed that a defendant's waiver of his Sixth Amendment right to a jury trial must be knowing, intelligent, and voluntary. *Hagen*, 690 N.W.2d at 158–59. The court noted that although Hagen, as part of his guilty plea, had waived his right to a jury trial on the elements of the offense, he had not knowingly waived his right to a jury determination of aggravating sentencing factors because he was not informed of that right at the time of sentencing. *Id.* at 159. In the absence of an express, knowing waiver, the court held that Hagen's statements could not be used to enhance his sentence. *Id.* at 159–60.

In addition, the court in *Hagen* noted that a defendant's stipulation to an element of an offense must be supported by a waiver of the defendant's right to a jury trial on that element. *Hagen*, 690 N.W.2d at 159 (citing *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn.1984)). The court concluded that because the *Blakely* line of cases has "effectively dismantled the distinction between offense elements and sentencing factors," a defendant may stipulate to a sentencing factor only after a waiver of the right to a jury trial on that factor. *Hagen*, 690 N.W.2d at 159.

In *State v. Barker*, we expressed approval of the court of appeals' analysis and conclusion in *Hagen*. *State v. Barker*, 705 N.W.2d 768, 773 (Minn.2005). Our statements in *Barker*, however, were dicta, and we have not yet had occasion to dispositively decide whether a knowing waiver is required before a defendant's statements at his guilty-plea hearing may be used to enhance his sentence. With that issue now squarely before us, we hold that a defendant must expressly, knowingly, voluntarily, and intelligently waive his right to a jury determination of facts sup-

porting an upward sentencing departure before his statements at his guilty-plea hearing may be used to enhance his sentence.[2] Because Dettman did not knowingly waive this right, his statements at his plea hearing cannot be used to enhance his sentence, and the upward sentencing departure in his case violates the dictates of *Blakely*.

■ The *Apprendi* line of cases establishes the principle that a defendant's constitutional right to a jury trial extends to *any fact*, other than the fact of a prior conviction, that is used to sentence the defendant. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *State v. Allen*, 706 N.W.2d 40, 46 (Minn.2005); *see also Blakely*, 542 U.S. at 304, 124 S.Ct. 2531 (recognizing that the Sixth Amendment jury-trial right extends to all facts that the law makes essential to punishment); *see also Apprendi*, 530 U.S. at 477, 494 n. 19, 120 S.Ct. 2348 (noting that a criminal defendant is entitled to a jury finding of each element of the offense with which he is charged and that a fact used to enhance a sentence is the functional equivalent of an element of an offense). This right is grounded in the Sixth Amendment's guarantee of the right to a jury trial and the requirement of proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 477, 120 S.Ct. 2348; *see also Blakely*, 542 U.S. at 305–06, 124 S.Ct. 2531 ("Our commitment to *Apprendi* * * * reflects * * * the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but

a fundamental reservation of power in our constitutional structure."). The use of a defendant's statements to enhance his sentence thus entails a relinquishment of his Sixth Amendment right to a jury determination of facts supporting an upward sentencing departure.

■ It is well established that a defendant's waiver of his right to a jury trial on the elements of an offense must be knowing, intelligent, and voluntary. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991); *State v. Pietraszewski*, 283 N.W.2d 887, 890 (Minn. 1979); *see also* Minn. R.Crim. P. 26.01, subd. 1(2)(a). We see no principled basis for differentiating between a waiver of the right to a jury trial on the elements of an offense and a waiver of the right to a jury determination of aggravating sentencing factors.[3] Both rights arise from the same Sixth Amendment guarantee, and the Supreme Court has said that a fact used to enhance a sentence is the "functional equivalent of an element of a greater offense." *Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348; *see also id.* at 494, 120 S.Ct. 2348 (commenting that the distinction between elements and sentencing factors is "constitutionally novel and elusive").

The dissent relies on language in *Blakely* that facts "admitted by a defendant" may be used to determine the defendant's sentence to support its conclusion that Dettman's plea hearing statements could constitutionally be used to enhance his

---

2. Our holding is in line with several other state courts that have held that a knowing, voluntary, and intelligent waiver is required before a defendant's statements may be used to enhance his sentence. *See, e.g., State v. Brown*, 212 Ariz. 225, 129 P.3d 947, 951 (2006); *Isaacks*, 133 P.3d at 1195; *State v. Meynardie*, 172 N.C.App. 127, 616 S.E.2d 21, 24 (2005); *State v. Curtis*, 126 Wash.App. 459, 108 P.3d 1233, 1236 (2005).

3. Our recent holding in *Osborne* that failure to raise a *Blakely* claim at the district court does not forfeit appellate review of that claim is similarly premised on the jury trial waiver requirement firmly embedded in our jurisprudence and reflected in Minn. R.Crim. P. 26.01. *See Osborne*, 715 N.W.2d at 442–46.

sentence. This reasoning begs the question of what constitutes an "admission" for *Blakely* purposes.[4] In the more familiar context of the Sixth Amendment right to a jury trial on the elements of an offense, it is clear that only a defendant's statement made after a knowing waiver of his right to jury trial constitutes an admission that dispenses with the state's burden of proving offense elements to a jury. *See Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (distinguishing between a guilty plea and a mere confession and holding that a valid guilty plea requires a knowing waiver of the right to a jury trial); Minn. R.Crim. P. 15.01 (requiring a waiver of the right to a jury trial as part of a valid guilty plea). Without such a waiver, a defendant's admissions are merely evidence that may be considered by a jury in determining guilt. *See State v. Brown*, 212 Ariz. 225, 129 P.3d 947, 952 (2006) ("Under the Sixth Amendment, a defendant who takes the stand at trial and admits the existence of one or more of the elements of an offense does not thereby surrender his right to have the jury find all of the elements of the crime."). The Supreme Court's equation of sentencing factors with elements of an offense compels the conclusion that, just as a defendant's admission to an element of an offense cannot be used in lieu of a jury finding unless the defendant knowingly waives his right to a jury trial on that element, so too must a defendant's admission of a fact supporting an upward sentencing departure be accompanied by a knowing waiver of his right to a jury finding on that fact before the admission may be used to enhance his sentence.[5]

Furthermore, language in *Blakely* supports our conclusion that an express waiver is required before a defendant's statements may be used to enhance his sentence. In *Blakely*, the Court stated,

nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers

---

**4.** The dissent cites *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), for the proposition that an admission for *Blakely* purposes includes a fact admitted by a defendant during a plea hearing. But *Almendarez–Torres* involved an entirely different exception to the rule announced in the *Apprendi* line of cases, the prior conviction exception, which is not implicated in the case at bar. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (*"Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *Almendarez–Torres*, 523 U.S. at 227, 118 S.Ct. 1219. That is, the fact admitted by the defendant in *Almendarez–Torres*, which the Supreme Court held could be used to enhance his sentence, was the fact of a prior conviction. *Almendarez–Torres*, 523 U.S. at 227, 118 S.Ct. 1219; *see Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348 ("[O]ur conclusion in *Almendarez–Torres*

turned heavily upon the fact that the additional sentence to which the defendant was subject was the prior commission of a serious crime." (quotation omitted)). Had Dettman admitted to a prior criminal conviction, we do not dispute that the conviction could have been used to enhance his sentence under the prior conviction exception, if otherwise permitted under a particular enhancement statute.

**5.** The Oregon Supreme Court has likewise concluded that an "admission" for *Blakely* purposes must be a judicial admission—that is, a "statement[ ] 'made by a party * * * *for the purpose of dispensing with proof of a fact in issue.' " State v. Harris*, 339 Or. 157, 118 P.3d 236, 244 (2005) (quoting *Foxton v. Woodmansee*, 236 Or. 271, 386 P.2d 659, 662 (1963)). The court in *Harris* distinguished such an admission from the broader evidentiary concept of an admission by a party opponent. *Id.* at 244 n. 10.

are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

*Blakely,* 542 U.S. at 310, 124 S.Ct. 2531 (citation omitted). This passage indicates that a defendant's stipulation to aggravating sentencing factors entails a waiver of his right to a jury trial on those factors.[6] Long-standing Sixth Amendment jurisprudence dictates that such a waiver must be knowing, voluntary, and intelligent. *See Brady,* 397 U.S. at 748, 90 S.Ct. 1463; *Ross,* 472 N.W.2d at 653.

We are aware that several federal courts of appeals have upheld upward sentencing departures based on facts admitted at a sentencing hearing, a plea hearing, or in a plea agreement, without requiring an express waiver of the right to a jury determination of aggravating sentencing factors. *See, e.g., United States v. Pittman,* 418 F.3d 704, 709 (7th Cir.2005); *United States v. Monsalve,* 388 F.3d 71, 73 (2d Cir.2004); *United States v. Saldivar–Trujillo,* 380 F.3d 274, 279 (6th Cir.2004); *United States v. Lucca,* 377 F.3d 927, 934 (8th Cir.2004). But these cases do not contain any reasoning supporting their conclusion that a waiver is not necessary. Instead, the cases simply cite *Blakely* for the proposition that facts admitted by a defendant may be used to enhance a sentence. *See, e.g., Saldivar–Trujillo,* 380 F.3d at 279; *Lucca,* 377 F.3d at 934. We believe our approach is preferable to that of the federal circuits because our approach more appropriately takes into account long-standing principles regarding a defendant's waiver of his jury-trial rights. We agree with the Colorado Supreme Court that a waiver requirement "furthers the central

goal of *Blakely,* which was to correct a system 'in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum sentence balloon from as little as five years to as much as life imprisonment.' " *People v. Isaacks,* 133 P.3d 1190, 1195 (Colo.2006) (quoting *Blakely,* 542 U.S. at 311, 124 S.Ct. 2531).

The state cites our decision in *State v. Leake,* 699 N.W.2d 312 (Minn.2005), in support of the argument that an express waiver is not required before a defendant's plea hearing statements may be used to enhance his sentence. In *Leake,* the district court relied on a defendant's statements during testimony to establish the factual basis for a guilty plea to an earlier offense to conclude that the earlier offense was a "heinous crime," a fact then used to enhance the defendant's sentence for the current offense. *Id.* at 319, 324–25. We held that the defendant's plea hearing statements for the prior offense could be used to establish that the prior offense was a "heinous crime" and thus enhance the defendant's sentence for the current offense, without requiring an express waiver of the right to a jury determination of aggravating sentencing factors. *Id.* at 324–25.

*Leake* is distinguishable from the case at bar in two crucial ways and thus does not control resolution of the issue presented here. First, in *Leake,* the admission used to enhance Leake's sentence was an admission to an essential element of a prior offense to which Leake had pleaded guilty—a "fact established by a plea of guilty." *Leake,* 699 N.W.2d at 324; *see*

---

6. Outside of the *Blakely* context, we have recognized that a defendant's stipulation to an element of an offense entails a waiver of his right to a jury finding on that element. *See Berkelman,* 355 N.W.2d at 397 (noting that

the defendant "in effect" offered to waive his right to a jury trial on an element of the crime charged by agreeing to stipulate to that element).

*Booker*, 543 U.S. at 244, 125 S.Ct. 738. As part of his guilty plea to the earlier offense, Leake had knowingly waived his right to a jury trial as to the elements of that offense. Here, the statements used to support Dettman's enhanced sentence were not admissions to essential elements of the offense to which Dettman pleaded guilty. *See* Minn.Stat. § 609.342, subd. 1 (2004) (setting forth the elements of first-degree criminal sexual conduct).

Second, unlike this case, *Leake* involved *Blakely*'s prior conviction exception, "which appears to incorporate its own admission exception." *Barker*, 705 N.W.2d at 774; *see Leake*, 699 N.W.2d at 323–25. The United States Supreme Court has expressly held that a defendant's statements during a plea colloquy may be used to determine the character of a prior offense for purposes of *Blakely*'s prior conviction exception, without requiring a knowing waiver of the right announced in *Blakely*. *Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *see also Leake*, 699 N.W.2d at 325. Language in *Shepard* suggests that admissions used

in the context of *Blakely*'s prior conviction exception need not be identical to admissions used to support aggravating sentencing factors unrelated to the fact of a prior conviction. *See Shepard*, 544 U.S. at 24–25, 125 S.Ct. 1254 (plurality opinion); *Barker*, 705 N.W.2d at 775. Because Dettman's statements were not used to support the fact of a prior conviction, our conclusion in *Leake* is inapplicable here.

Dettman's waiver of his right to a jury trial on the issue of guilt cannot be interpreted as a waiver of his right to a jury determination of aggravating sentencing factors. Dettman knowingly waived his jury-trial right as to the elements of first-degree criminal sexual conduct.[7] However, because Dettman was sentenced before *Blakely* was decided, he could not have known that he had a right to a jury determination of the facts used to enhance his sentence—facts going beyond the elements of first-degree criminal sexual conduct— and thus did not knowingly waive that right.[8] *See* Minn.Stat. § 609.342, subd. 1; *Brown*, 129 P.3d at 950–51.

**7.** At the plea hearing, the district court informed Dettman only of his right to a jury trial on the issue of guilt. As the dissent notes, the district court told Dettman that his sentence could be enhanced beyond the 144–month presumptive sentence. But the court never informed Dettman that he had a right to a jury determination of the facts supporting such an enhancement, information crucial to a knowing waiver.

**8.** *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and its progeny, cited by the dissent, are inapposite here. *Brady* involved an attempt by a defendant to invalidate his guilty plea due to a subsequent change in the law, which the defendant argued altered the calculus involved in his decision to plead guilty. *Brady*, 397 U.S. at 756–57, 90 S.Ct. 1463. The Supreme Court rejected Brady's contention that his decision to plead guilty was unintelligently made because later case law revealed that his decision was based on a faulty legal premise.

*Id.* at 757, 90 S.Ct. 1463. In a later decision, the Court concluded that the possibility that Brady's plea "might have been influenced by an erroneous assessment of the sentencing consequences if he had proceeded to trial did not render his plea invalid." *United States v. Broce*, 488 U.S. 563, 572, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *see Brady*, 397 U.S. at 757, 90 S.Ct. 1463; *see also McMann v. Richardson*, 397 U.S. 759, 772–74, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (holding that a guilty plea is not rendered invalid because subsequent developments in the law reveal that the defendant may have misjudged the admissibility of his confession). Unlike the defendants in *Brady* and *McMann*, however, Dettman does not argue, and we do not hold, that his guilty plea was involuntary, unintelligent, or otherwise invalid as a result of his imperfect knowledge of his Sixth Amendment rights at the time of his plea. Instead, we merely conclude that the upward sentencing departure was unconstitutional because Dettman did not knowingly waive his Sixth Amend-

■ In sum, in the absence of a knowing waiver of his Sixth Amendment right to a jury determination of facts supporting an upward sentencing departure, Dettman's statements at his plea hearing cannot be used as admissions to enhance his sentence.[9] Additionally, Dettman's statements to police, later incorporated into the complaint, are not admissions on which a judge may base a sentence enhancement because they were not made for purposes of dispensing with the state's burden of proof after a knowing waiver of Dettman's jury-trial rights. Accordingly, because the upward departure in this case was based on facts neither found by a jury nor properly admitted by Dettman, we hold that the departure violated Dettman's Sixth Amendment rights.

### III.

■ Having determined that the upward sentencing departure in this case violated the rule established in *Blakely,* we now consider whether this error was harmless. *See Osborne,* 715 N.W.2d at 447; *see also Washington v. Recuenco,* —— U.S. ——, 126 S.Ct. 2546, 2553, —— L.Ed.2d —— (2006) (concluding that *Blakely* errors are subject to harmless error analysis). Because the erroneous departure increased the length of Dettman's sentence by 72 months and because we cannot say with certainty that a jury would have found the aggravating factors used to enhance Dettman's sentence had those factors been submitted to a jury in compliance with *Blakely,* we conclude that the *Blakely* error was not harmless. *See Osborne,* 715 N.W.2d at 447. Accordingly,

we affirm the court of appeals and remand to the district court for resentencing consistent with *State v. Shattuck,* 704 N.W.2d 131, 148 (Minn.2005). Because we affirm the court of appeals' reversal of Dettman's sentence based on the *Blakely* error, we do not reach Dettman's alternative argument that the facts of this case do not present substantial and compelling circumstances justifying an upward sentencing departure.

Affirmed.

ANDERSON, PAUL H., Justice (concurring specially).

I agree with the result reached by the majority, but disagree with the majority's analysis for the reasons stated in my special concurrence in *State v. Osborne.* *See State v. Osborne,* 715 N.W.2d 436, 448–52 (Minn.2006) (Anderson, Paul H., J., concurring specially) (stating that *"Blakely* articulated a significant new rule of law, that it is still in its infancy, and ultimately, \* \* \* it is the United States Supreme Court that is best suited to guide the continued development of this new rule."); *see also Washington v. Recuenco,* —— U.S. ——, 126 S.Ct. 2546, 2551, 2553, —— L.Ed.2d —— (2006) (holding that failure to submit a sentencing factor to the jury is not structural error and that the objected-to *Blakely* error was subject to a harmless-error analysis, citing to *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)) for the proposition that "most constitutional errors can be harmless.").

---

ment right to a jury determination of the facts supporting the departure, and thus his plea hearing statements could not be used to enhance his sentence.

**9.** Contrary to the dissent's assertion, our interpretation of "admissions" for *Blakely* pur-

poses does not render the *Blakely* "admission exception" a nullity. When a defendant properly waives his right to a jury determination of aggravating sentencing factors, his admissions may be used to enhance his sentence.

Unlike the majority, I would apply the plain error doctrine to the unobjected-to *Blakely* error in this case and conclude that there was error, it was plain because the aggravating factors were not admitted to a degree that the concerns raised in *Blakely* are satisfied, that the plain error affected Dettman's substantial rights, and that the fairness and the integrity of Dettman's trial was affected to the extent that he is entitled to relief. Using this analytical framework, it is not necessary to reach the question of waiver.

I would affirm the court of appeals.

GILDEA, J. (dissenting).

I respectfully dissent from the majority's conclusion that the district court erred in imposing an upward departure sentence. The district court's decision to depart was based on facts Dettman admitted after he executed a knowing and voluntary waiver of his trial rights. I would reverse the court of appeals and uphold the sentence imposed.

In *Blakely v. Washington*, the Supreme Court recognized that sentencing courts could use facts the defendant admitted in imposing sentence. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The district court imposed an upward departure sentence in this case based on facts Dettman admitted. The majority concludes that Dettman's admissions were not really admissions for *Blakely* purposes because he did not explicitly waive any right that *Blakely* gave him to have a jury decide the facts he had admitted. In my view the majority's conclusion is wrong for two independent reasons. First, *Blakely* did not give Dettman any rights that he needed to waive. Second, if *Blakely* gave Dettman any rights, well-settled precedent compels the conclusion that Dettman's waiver of his trial rights is valid notwithstanding the change in the sentencing procedures announced in *Blakely*.

## I.

In *Blakely*, the Supreme Court said that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), for "facts admitted by the defendant"); *see also United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). I believe the Supreme Court meant it when it said that sentencing courts could use "facts * * * admitted by the defendant" as a basis to depart without implicating the rule announced in *Apprendi*. *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted). In other words, if a fact has not been admitted by the defendant, the sentencing court may not use it as a basis to depart unless the fact has been found by a jury. Here, the fact was admitted and a jury finding was therefore not necessary for the sentencing court to use the fact as a basis to depart. In my view, the district court did precisely what the Supreme Court authorized.

Dettman waived his trial rights, including his right to remain silent and his right to a jury trial. Prior to accepting Dettman's guilty plea, the district court inquired to insure that Dettman understood these and all of his rights. Specifically, the district court asked if Dettman knew

that there was no agreement regarding what his sentence would be, and

> that at sentencing the actual sentence will be up to the judge who sentences you, * * * after hearing arguments from both sides and that both attorneys are free to make a motion for a downward departure from this guideline sentence and the prosecution is also free to make a motion for an upward departure?

Dettman responded that he understood. The judge then inquired to make sure that Dettman understood that "there are no guarantees about whether either of those motions would be granted and it's possible that you could be sentenced to longer than 144 months?" Again Dettman indicated that he understood and stated that he wanted to proceed with his guilty plea.

Following the district court's examination, Dettman admitted that he lured the victim to his apartment through a lie, restrained her, threatened to cut her throat if she was not quiet, engaged in multiple acts of sexual penetration without the victim's consent, and that the victim feared for her safety. These admissions were beyond the elements of the offense to which Dettman pleaded guilty and accordingly, could be used to support an aggravated departure as long as the departure complied with the rule in *Blakely*.[10]

Before *Blakely*, trial courts in Minnesota based upward departures upon three types of facts: 1) a fact admitted by the defendant,[11] 2) a fact reflected in the jury verdict, and 3) a fact found by a judge without first obtaining the defendant's waiver of a jury trial. In *Blakely*, the Supreme Court ruled that, under sentencing guidelines similar to Minnesota's, the use of the third type of fact (a fact found by a judge without first obtaining the defendant's waiver of a jury trial) violated the defendant's Sixth Amendment right to a jury trial. *See* 542 U.S. at 303, 124 S.Ct. 2531. *Blakely* did not change the law regarding the first two types of facts. An examination of *Blakely* confirms this result.

In *Blakely*, the defendant entered an *Alford* plea; he did not make factual admissions but merely admitted that the evidence the state had was sufficient to convict him. *See State v. Blakely*, 111 Wash. App. 851, 47 P.3d 149, 153 (2002), *rev'd*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Supreme Court thought it important to note that the defendant had admitted only to the elements of the crime to which he pleaded guilty—"but no other relevant facts." *Blakely*, 542 U.S. at 299, 124 S.Ct. 2531.

After the plea, the sentencing court imposed an upward departure, and not the sentence recommended in the plea agreement. The sentencing judge imposed an upward departure based not on any facts admitted by the defendant, but on the victim's description of the crime. 542 U.S. at 300, 124 S.Ct. 2531 ("Pursuant to the plea agreement, the State recommended a sentence within the standard range of 49 to 53 months. After hearing [the victim's] description of the kidnapping, however, the

**10.** Dettman pleaded guilty to violation of Minn.Stat. § 609.342, subd. 1(c) (2004), which requires sexual penetration under circumstances that "cause the complainant to have a reasonable fear of imminent great bodily harm."

**11.** *See, e.g., Rairdon v. State*, 557 N.W.2d 318, 321, 327 (Minn.1996) (upward departure based on defendant's admission during jury trial of beginning sexual abuse of daughter when she was eight and continuing abuse for five years); *State v. Garcia*, 302 N.W.2d 643, 645–47 (Minn.1981) (upward departure based on defendant's admissions made during guilty plea), *overruled on other grounds by State v. Givens*, 544 N.W.2d 774, 777 n. 4 (Minn. 1996).

judge rejected the State's recommendation and imposed an exceptional sentence of 90 months * * *."). Blakely objected and the court scheduled a sentencing hearing. Many witnesses testified during the three-day hearing, *id.*, including Blakely who "took the opportunity to explain to the court his version of the events and the motivations of the witnesses against him." 47 P.3d at 160. At the conclusion of the hearing, the judge denied Blakely's objection and "adhered to [the judge's] initial determination of deliberate cruelty." 542 U.S. at 301, 124 S.Ct. 2531. The Supreme Court reversed the departure in *Blakely* because "[t]he facts supporting [the sentencing court's] finding [of deliberate cruelty] were neither admitted by [defendant] nor found by a jury." *Id.* at 303, 124 S.Ct. 2531.[12]

In my view, the error in the majority's reasoning is its contention that "[t]he use of a defendant's statements to enhance his sentence thus entails a relinquishment of his Sixth Amendment right to a jury determination of facts supporting an upward sentencing departure." A defendant did not have the right to a jury determination of *admitted* sentencing factors before *Blakely* and neither *Blakely* nor its progeny have created such a right. Instead, in determining upward departures, defendants now have a right to a jury determination of facts *other* than the two types of facts the *Blakely* court specifically said do not require a jury determination (i.e. facts admitted by the defendant or facts reflected in a jury verdict). *Blakely* did not change precedent that allowed a sentencing court to impose an aggravated departure based on facts the defendant has admitted.[13]

The majority argues that the *Blakely* admission exception "begs the question of what constitutes an 'admission' for *Blakely* purposes." The Supreme Court, however, has provided the answer to the majority's question. In articulating the admission exception in *Blakely*, the Supreme Court cited to its opinion in *Apprendi*. *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (citing *Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348). In discussing admissions in *Apprendi*, the Supreme Court referred to its earlier case in *Almendarez–Torres v. United States*, 523 U.S. 224, 227, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *See Apprendi*, 530 U.S. at 487–88, 120 S.Ct. 2348. In describing its decision in *Almendarez–Torres*, the Supreme Court emphasized that because Almendarez–Torres had *admitted* a fact

---

**12.** The defendant in *Apprendi* similarly had not admitted the fact the sentencing court used to enhance his sentence. *See* 530 U.S. at 471, 120 S.Ct. 2348 (noting that defendant "took the stand himself [during the sentencing hearing], explaining that the incident was an unintended consequence of overindulgence in alcohol, denying that he was in any way biased against African–Americans.").

**13.** The majority purports to rely on a portion of *Blakely* to support its conclusion "that an express waiver is required before a defendant's admissions may be used to enhance his sentence." The quotation from *Blakely* is:

When a defendant pleads guilty, the State is free to seek judicial enhancements so long as the defendant *either* stipulates to the relevant facts *or* consents to judicial fact find-

ing. If appropriate waivers are procured, States may continue to offer judicial fact finding as a matter of course to all defendants who plead guilty.

*Blakely*, 542 U.S. at 310, 124 S.Ct. 2531 (emphasis added) (citation omitted). The majority emphasizes the Court's use of the word "waivers" in the second sentence, but ignores the Court's use of the disjunctives "either" and "or" in the first sentence, and it further ignores the Court's recognition that "appropriate waivers" are required only for "judicial factfinding"—not when a defendant "stipulates to the relevant facts." Dettman's admissions during his guilty plea are precisely the type of stipulation at issue in this discussion from *Blakely*.

during his plea hearing, that fact could be used to increase Almendarez–Torres' sentence without violating the rule announced in *Apprendi*. *Apprendi*, 530 U.S. at 487–88, 120 S.Ct. 2348. Most importantly (for purposes of our analysis), the fact admitted during Almendarez–Torres' plea was *not* an element of the crime to which he pleaded guilty. Thus, to answer the majority's question, at the very least, the *Blakely* admission exception applies to a fact admitted during a defendant's plea hearing that is not an element of the crime to which the defendant pleaded guilty. This, of course, is exactly the circumstance of Dettman's case.

Every federal circuit court of appeals has indicated that sentencing courts do not run afoul of *Blakely* or the Sixth Amendment when they rely on a defendant's admissions of fact in sentencing. *See, e.g., United States v. Saldivar–Trujillo*, 380 F.3d 274, 279 (6th Cir.2004) ("The sentence in the present case was based solely upon the facts admitted by [the defendant] as part of his guilty plea. *Blakely* therefore does not affect the validity of his sentence.").[14] Even though Dettman is arguing that a "right" based on the U.S. Constitution has been violated, the majority dismisses the federal cases without discussion, and relies instead on certain state cases.[15] While it seems to me that the

14. *See also United States v. Jimenez–Beltre*, 440 F.3d 514, 520 (1st Cir.2006); *United States v. Burke*, 431 F.3d 883, 889 (5th Cir. 2005); *United States v. Ameline*, 409 F.3d 1073, 1077–78 (9th Cir.2005); *United States v. Lechuga–Ponce*, 407 F.3d 895, 896 (7th Cir. 2005); *United States v. Bartram*, 407 F.3d 307, 314 (4th Cir.2005) ("The district court did not err in its fact finding because the facts were based on the defendant's own admissions [made at the sentencing hearing]. Therefore, we are of the opinion and hold the defendant's argument under *Blakely* to be without merit."), *cert. denied*, —— U.S. ——, 126 S.Ct. 1374, 164 L.Ed.2d 82 (2006); *United States v. Davis*, 407 F.3d 162, 164 (3d Cir.2005); *United States v. Coles*, 403 F.3d 764, 767 (D.C.Cir.2005); *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir.2005) ("Because Shelton admitted to the facts that enhanced his sentence [during the plea colloquy and at the sentencing hearing], there is no Sixth Amendment violation under *Booker* in this case."); *United States v. Murdock*, 398 F.3d 491, 502 (6th Cir.2005) ("Because facts sufficient to support the sentence were admitted by the defendant [during the plea colloquy], his Sixth Amendment rights were not violated in this case."); *United States v. Labastida–Segura*, 396 F.3d 1140, 1142 (10th Cir.2005); *United States v. Monsalve*, 388 F.3d 71, 73 (2d Cir.2004) ("Defendant was sentenced solely on the basis of the drug quantity and type she freely and knowingly admitted in her plea agreement. * * * Thus, the constitutional requirement of a sentence based solely on facts admitted by the defen-

dant set forth in *Blakely* has been satisfied."), *cert. denied*, 543 U.S. 1175, 125 S.Ct. 1387, 161 L.Ed.2d 157 (2005); *United States v. Lucca*, 377 F.3d 927, 934 (8th Cir.2004) ("No additional finding [beyond the facts defendant admitted as part of guilty plea] was required by the district court to justify the sentence of imprisonment * * *. Accordingly, Lucca's sentence was consistent with the Sixth Amendment as interpreted by *Blakely* and *Apprendi.*").

15. At least one state explicitly agrees with the conclusion of the Federal circuits, with others impliedly agreeing. *See, e.g., Morgan v. State*, 829 N.E.2d 12, 17 (Ind.2005) ("We do not see how the Sixth Amendment is implicated or endangered by permitting judges to use aggravators to enhance sentences so long as the underlying facts supporting the aggravator are found by a jury or admitted by a defendant."); *see also State v. Allen*, 359 N.C. 425, 615 S.E.2d 256, 265 (N.C.2005), *abrogated on other grounds by Washington v. Recuenco*, —— U.S. ——, 126 S.Ct. 2546, —— L.Ed.2d —— (2006); *State v. Ose*, 156 Wash.2d 140, 124 P.3d 635, 639 (2005); *cf. Lopez v. People*, 113 P.3d 713, 719, 723 (Colo.2005) (concluding that "facts admitted by the defendant" may be used as aggravating factors and describing such facts as "*Blakely*-compliant"), *cert. denied*, —— U.S. ——, 126 S.Ct. 654, 163 L.Ed.2d 529 (2005). In my view, the state cases the majority cites are not helpful to the question presented here. The majority relies on the split opin-

federal cases are more useful to an interpretation of what is purportedly a federal constitutional "right," we need not even look outside our own jurisprudence to resolve this case.

In *Shattuck*, this court implicitly recognized that when the "guilty plea alone" supports an enhanced sentence, the rule in *Blakely* is not implicated. 704 N.W.2d at 131, 141–42 (Minn.2005); *see also id.* at 142 ("*Blakely* expressly permits a defendant to either stipulate to relevant facts or consent to judicial factfinding regarding sentencing factors."). In *State v. Barker*, we specifically recognized "the *Blakely* admission exception." [16] 705 N.W.2d 768, 773 (Minn.2005).

Finally, we relied on the "admission exception" in upholding an enhanced sentence in *State v. Leake*, 699 N.W.2d 312 (Minn.2005). We expressly said that the defendant's admissions could be used by the sentencing court in *Leake*. We began our analysis in *Leake* by discussing "the prior conviction exception recognized in *Apprendi*." *Leake*, 699 N.W.2d at 323. The question presented in *Leake* however could not be resolved merely by applying the prior conviction exception. The district court also reviewed the factual basis the defendant provided in pleading guilty to the prior criminal sexual conduct charge in determining that the crime was a "heinous crime." We upheld this judicial determination under the *Apprendi/Blakely* rule because it was based on admissions made by the defendant. *Leake*, 699 N.W.2d at 324.[17]

The majority attempts to distinguish *Leake*, arguing that the use of the defen-

ion from the Colorado Supreme Court in *People v. Isaacks*, 133 P.3d 1190 (Colo.2006). *Isaacks* is so factually distinguishable from this case as to make its reasoning inapposite. In *Isaacks* the sentencing court, in imposing an upward departure, did not rely on statements the defendant made during a guilty plea. Rather, the court used statements in a presentence report and the defendant's failure to object to these statements to find aggravating facts. The court held that reliance on such statements conflicted with *Blakely* and the Colorado Supreme Court's earlier decision in *Lopez*, 113 P.3d at 723, which recognized that admissions by a defendant *could* provide the basis for judicial fact finding on aggravating factors. *Isaacks*, 133 P.3d at 1192. ("[W]e hold that a defendant's failure to object to facts in a presentence report does not constitute an admission for purposes of *Blakely* and *Lopez* unless the defendant makes a constitutionally sufficient waiver of his right to a jury trial on the facts contained in the report."). The majority also cites a decision from the Oregon Supreme Court, *State v. Harris*, 339 Or. 157, 118 P.3d 236 (2005). While the defendant in *Harris* admitted that he had prior juvenile adjudications, he specifically objected to the use of the juvenile adjudications as a basis to enhance his sentence. *Id.* at 245. "As a result" of the defendant's objection, the *Harris*

court could "not say, based upon the record before us, that defendant's acknowledgement of a prior juvenile adjudication in filling out his guilty plea amounted to either an admission or a knowing waiver of his jury trial right for sentencing purposes." *Id.* As the Oregon intermediate appellate court recognized, the rationale of *Harris* does not apply where a defendant has "admitted all of the facts necessary to justify" an enhanced sentence. *State v. Herrera–Lopez*, 204 Or.App. 188, 129 P.3d 238, 242 (2006) (distinguishing *Harris* and noting that "[d]efendant's guilty plea and his colloquy with the court amount to admissions of that fact. Thus, under a straightforward application of the *Blakely* rule as restated in *Booker*, the trial court's sentence was not unconstitutional.").

16. As the majority acknowledges, *Barker's* agreement "in concept" with the approach the court of appeals adopted in *State v. Hagen*, 690 N.W.2d 155 (Minn.App.2004), was dicta. *See State v. Barker*, 705 N.W.2d 768, 773 (Minn.2005).

17. To the extent the district court relied on the victim's testimony as a basis to enhance, we held this "was error as it does not meet the requirements of *Blakely*." *Leake*, 699 N.W.2d at 325 n. 9.

dant's admissions was constitutional *because* those admissions were made within the context of the prior conviction exception to the *Apprendi/Blakely* rule. Nothing in *Leake* supports this limitation. We unqualifiedly said in *Leake:* "Under both *Apprendi* and *Blakely*, a defendant's admissions can be used to determine sentencing enhancements." *Leake,* 699 N.W.2d at 324. We also cited with approval the decisions from the federal circuits, including some of the federal cases cited *supra*, that hold that sentencing courts may rely on defendants' factual admissions. *See Leake*, 699 N.W.2d at 325 (citing federal cases). Finally, the admissions in *Leake* were made as part of a guilty plea—just as in this case.[18] We did not condition the sentencing court's reliance on these factual admissions on a finding that the defendant had waived a separate right to have a sentencing jury determine these facts. The defendant admitted to the facts as part of a guilty plea and the sentencing court in the later case was permitted to rely on those facts as the basis for imposing an enhanced sentence. The same result is warranted in this case. I would hold that Dettman's admissions at his plea hearing were properly considered by the district court in determining whether to impose an upward sentencing departure.

## II.

Even if *Blakely* gave Dettman a right to jury trial on sentencing factors, I would

conclude that his waiver of his trial rights included this *Blakely* right. The majority bases its conclusion that the district court erred in imposing an upward departure on the assertion that "Dettman's waiver of his right to a jury trial on the issue of guilt cannot be interpreted as a waiver of his right to a jury determination of aggravating sentencing factors." The majority cites to our rule that waivers of the right to jury trial must be knowing and voluntary and articulated on the record. There is no dispute that Dettman made such a waiver in this case. In his Petition to Enter a Plea of Guilty and independently on the record, Dettman gave up his trial rights, including his right to "trial by jury." The dispute here is only about whether Dettman's waiver was "knowing" as to any *Blakely* rights.

Because Dettman did not explicitly waive a jury finding of aggravating factors, the majority concludes that his waiver of his trial rights was unknowing and therefore ineffective as to any rights created by *Blakely*. Of course, Dettman could not have articulated a waiver of any *Blakely* rights since the "new rule" in *Blakely* would not be announced until six months after the district court accepted Dettman's guilty plea. *See State v. Houston,* 702 N.W.2d 268, 273 (Minn.2005). I believe the majority errs when it finds that Dettman's waiver cannot be viewed as knowing

---

**18.** The majority also contends that *Leake* is distinguishable because the admissions relied on were simply admissions to the elements of the offense and Leake had properly waived his right to a jury trial on the question of his guilt or innocence as to that charge. The majority's reading of the *Blakely* admission exception seems to be that it covers only a defendant's admissions to elements of the crime. Such a reading would render the exception a nullity in Minnesota because "[t]he reasons used for departing must not themselves be elements of the underlying crime."

*State v. Blanche,* 696 N.W.2d 351, 378–79 (Minn.2005). This reading would also have rendered the exception a nullity in *Blakely* itself, because as the Supreme Court mentioned, Washington also disallowed departures to be based on elements of the underlying crime. *Blakely*, 542 U.S. at 299, 124 S.Ct. 2531 (citing *State v. Gore,* 143 Wash.2d 288, 21 P.3d 262, 277 (2001), *overruled on other grounds by State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192 (2005)). I do not believe that the Supreme Court's careful discussion of admissions was surplusage.

because he did not anticipate the rule announced in *Blakely*. The Supreme Court and lower federal courts uniformly recognize that a subsequent change in sentencing law does not render a defendant's guilty plea invalid or make it "unknowing." I would apply that principle here and conclude that Dettman's waiver satisfies our rule requiring knowing and voluntary waivers of the right to jury trial.

The leading case from the Supreme Court on the question of whether changes in the law invalidate a guilty plea is *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Brady*, the Supreme Court held that "absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the *then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757, 90 S.Ct. 1463 (emphasis added and citation omitted).[19] In a related opinion issued the same day, the Court stated:

> It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of

counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

*McMann v. Richardson*, 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

More recently, the Court has confirmed its holding in *Brady*, stating "that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Specifically referenced as a "form of misapprehension" was the circumstance where a "defendant failed to anticipate a change in the law regarding relevant punishments." *Id.* (citing *Brady*, 397 U.S. at 757, 90 S.Ct. 1463) (internal quotation marks omitted).

Given this clear and long-established precedent, it should be no surprise that every federal circuit court of appeals that has addressed the issue has concluded that the defendant's guilty plea was knowing, voluntary, and intelligent notwithstanding a subsequent change in the applicable sentencing law. For example, in *United States v. Parsons*, the defendant pleaded guilty to mail fraud and money laundering. 408 F.3d 519, 520 (8th Cir.2005). The defendant claimed "that the district court committed Sixth Amendment error by en-

---

**19.** The Court later characterized the defendant's plea in *Brady* as:

> intelligent because, although later judicial decisions indicated that at the time of his plea he did not correctly assess every relevant factor entering into his decision, he was advised by competent counsel, was in

control of his mental faculties, and was made aware of the nature of the charge against him.

*Bousley v. United States*, 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted).

hancing his sentence under the [Federal Sentencing] Guidelines based on the amount of loss" attributable to his crimes. *Parsons,* 408 F.3d at 521. In addition to concluding that there was no error because Parsons had admitted to the amount of the loss, the Eighth Circuit also concluded that "the development in the law announced by *Booker* subsequent to Parsons's guilty plea does not invalidate his plea." *Parsons,* 408 F.3d at 521 (citing *Brady,* 397 U.S. at 757, 90 S.Ct. 1463).[20]

These federal appellate cases recognize that the failure to anticipate a change in the law regarding sentencing does not, as a constitutional matter, undermine the validity of the defendant's guilty plea.[21] As the Sixth Circuit succinctly stated after reviewing the Supreme Court's precedent,

the Court has explained that where developments in the law later expand a right that a defendant has waived in a

plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance.

*United States v. Bradley,* 400 F.3d 459, 463 (6th Cir.2005), *cert. denied,* — U.S. ——, 126 S.Ct. 145, 163 L.Ed.2d 144 (2005).

Dettman made his guilty plea fully aware of the charges against him, after advice from his counsel, and with a full understanding of the range of consequences he faced as a result of pleading guilty. The analysis in the federal cases compels the conclusion that Dettman's guilty plea was voluntary, knowing, and intelligent.

In the face of *Brady* and its progeny, the only way for the majority to conclude that Dettman's waiver was not valid as to

**20.** *See also United States v. Roque,* 421 F.3d 118, 119 (2d Cir.2005) (citing *Brady* and holding that the defendant could "not withdraw his plea as unintelligent, involuntary, or otherwise illegal, based solely on changes in federal law effected by the United States Supreme Court's decision in [*United States v. Booker*]."), *cert. denied,* — U.S. ——, 126 S.Ct. 1094, 163 L.Ed.2d 908 (2006); *United States v. Johnson,* 410 F.3d 137, 151–53 (4th Cir.2005) ("the issuance of *Booker* after the plea agreement was reached does not render Johnson's plea unknowing or involuntary"), *cert. denied,* — U.S. ——, 126 S.Ct. 461, 163 L.Ed.2d 350 (2005); *United States v. Lockett,* 406 F.3d 207, 213 (3d Cir.2005) ("The Supreme Court has explained that where subsequent developments in the law expand a right that a defendant has waived in a plea agreement, that change does not make the plea involuntary or unknowing or otherwise undo its binding nature."); *United States v. Porter,* 405 F.3d 1136, 1144 (10th Cir.2005) ("Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later ju-

dicial determinations."), *cert. denied,* — U.S. ——, 126 S.Ct. 550, 163 L.Ed.2d 466 (2005); *United States v. Sahlin,* 399 F.3d 27, 31 n. 3 (1st Cir.2005) ("*Brady* also makes clear that a subsequent judicial decision changing the relevant sentencing law does not permit an attack on whether the plea was knowing.").

**21.** The majority cites nothing from our own jurisprudence that supports a conclusion that our understanding of the scope of a guilty plea varies from the Supreme Court's rule articulated in *Brady* and *McMann.* Moreover, while we do not appear to have addressed the issue in the context of sentencing, we have followed the Supreme Court's formulation of the rule in other contexts. *See, e.g., State v. Danaher,* 293 Minn. 435, 436, 197 N.W.2d 425, 426 n. 2 (1972) ("Waiving trial involves a risk that an attorney's assessment of the law or facts might later prove to be erroneous.") (citing *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); *McLaughlin v. State,* 291 Minn. 277, 280, 190 N.W.2d 867, 870 (1971) (noting that "[t]he logic advanced in *McMann* is compelling.").

any *Blakely* rights would be to conclude that Dettman had two separate jury trial rights, one on the question of guilt and a separate one on sentencing factors. The majority cites no case that stands for that proposition.[22]

I would hold that Dettman's plea does not become unknowing because of the new rule in *Blakely*.[23]

### III.

A final issue remains unaddressed by the majority. Dettman alternatively argues that the facts admitted by him do not present substantial and compelling circumstances justifying an upward sentencing. This argument is without merit. Dettman's express, knowing, and voluntary admission to multiple forms of sexually penetrating the victim amply supports the district court's decision to depart. *State v. Van Gorden,* 326 N.W.2d 633, 635 (Minn.1982); *State v. Martinez,* 319 N.W.2d 699, 700–01 (Minn.1982).

I would reverse the court of appeals and uphold the sentence originally imposed.

---

**22.** *Blakely* itself seems to recognize that the constitution guarantees the defendant *one* right to a jury trial. My reading is based on the exchange between Justice Scalia (for the majority) and Justice Breyer (in dissent), where the majority agreed with Justice Breyer that the "States are not *required* to give defendants the option of waiving jury trial on some elements but not others." 542 U.S. at 310 n. 12, 124 S.Ct. 2531. *Blakely* also does not *prevent* a state from giving defendants a separate jury trial on sentencing factors, and I note that as a matter of public policy, I think it preferable post-*Apprendi* and *Blakely* for defendants who desire to forego their trial rights to execute separate waivers of a jury finding on guilt and a jury finding on sentencing factors. I do not believe, however, that my public policy preferences shed any light on the constitutional question raised by Dettman.

---

PAGE, Justice.

I join in part II of Justice Gildea's dissent.

---

**23.** To conclude otherwise effectively withdraws Dettman's guilty plea or rewrites the plea agreement the parties reached. I do not believe this court should do either. As the Tenth Circuit said, "The essence of plea agreements * * * is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." *Porter,* 405 F.3d at 1145. One of the risks that Dettman assumed was the risk that the Supreme Court would announce what we have described as a "new rule." *Houston,* 702 N.W.2d at 273. Because Dettman assumed that risk, his right to a trial by jury is validly foregone and his guilty plea should be upheld as negotiated by the parties and accepted by the district court.