22924

The STATE, Respondent v. Limmie ARTHUR, Appellant.
(374 S. E. (2d) 291)

Supreme Court

*I. S. Leevy Johnson, David I. Bruck, John H. Blume,* and *S. C. Office of Appellant Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, *Sol. James O. Dunn* and *Asst. Sol. Debra Lynn Owens,* Conway, *for respondent.*

Heard March 9, 1988.

Decided Nov. 14, 1988.

CHANDLER, Justice:

For the second time, Appellant Limmie Arthur appeals a death sentence imposed for the 1984 murder of "Cripple Jack" Miller.

We reverse and remand for a new resentencing trial.

## FACTS

In August 1985, Arthur was convicted by a jury of murder and armed robbery, and sentenced to death. We affirmed the convictions, but reversed the death sentence and remanded for resentencing. *See State v. Arther*[1] for a statement of the facts.

At the commencement of his resentencing trial Arthur's attorneys informed the Court that the defense, with Arthur's full knowledge, "waived the Defendant's right to a jury and agreed to try this case before Your Honor alone. . . ."

The trial judge accepted the waiver, conducted a nonjury trial, then sentenced Arthur to death.

Arthur appeals, now contending that he did not, within the meaning and scope of constitutional and statutory-mandated protections, knowingly and voluntarily waive his right to a trial by jury. We agree.

## ISSUES

Although other issues are raised by this appeal, we address only whether Arthur's waiver of the right to be resentenced by a jury was made "knowingly and voluntarily."

---

[1] 290 S. C. 291, 350 S. E. (2d) 187 (1986). Although various spellings have been used, the correct spelling of Appellant's last name is "Arthur."

## DISCUSSION

Trial by jury is a right guaranteed by the Constitutions of both South Carolina and the United States. Additionally, S. C. Code Ann. § 16-3-25(E)(2), entitled Arthur to have his punishment determined by a jury in Phase II of a bifurcated trial.

■ The State concedes that waiver of a constitutional or statutory right requires a showing on the record that the defendant made the waiver knowingly and intelligently. *See State v. Patterson*[2] and *State v. Reed.*[3]

The seminal and still landmark decision on this question is *Patton v. United States,*[4] in which the U. S. Supreme Court urges trial by jury for disposition of criminal cases:

> Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, *in addition to the express and intelligent* consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, *and with a caution increasing in degree as the offenses dealt with increase in gravity.* (Emphasis supplied.)

Both State and Federal jurisdictions uniformly uphold waiver of the right by an accused, so long as it is made knowingly and voluntarily. However, from a searching re-

---

[2] 278 S. C. 319, 322, 295 S. E. (2d) 264, 265 (1982).
[3] 293 S. C. 515, 517, 362 S. E. (2d) 13, 14 (1987).
[4] 281 U. S. 276, 312-13, 50 S. Ct. 253, 263, 74 L. Ed. 854, 870 (1930).

view of case law it is clear that Courts vary widely as to the sufficiency of the waiver.[5]

We hold that acceptance of a jury trial waiver must ■ be based upon a written record clearly demonstrating that it was made knowingly and voluntarily. This can be accomplished only through a searching interrogation of the accused by the trial court itself. Here, the determination was made upon a patently insufficient inquiry.

The following constitutes the entire colloquy between the Court and Arthur prior to sentencing:

> MR. BLUME: Your Honor, I think the thing that we need to put on the record is that the Defense waived the Defendant's right to a jury and agreed to try this case before Your Honor alone, and that that was done with the Defendant's full knowledge, and on our advice.
> COURT: Was that the consensus of all four attorneys?
> MR. BLUME: It was a—unanimous. All four attorneys were in agreement that that was the best way to proceed in this case, and the Defendant agreed.
> COURT: Mr. Arthur, did you agree to that too?
> MR. ARTHUR: Yes sir.
> COURT: To proceed before just the Judge and not before the jury?
> MR. ARTHUR: Yes sir, Your Honor.
> COURT: All right, you got any questions you want to ask me about the difference in the two before we get started?
> MR. ARTHUR: No sir, Your Honor.

None of the three questions propounded to Arthur ■ was of the nonleading character essential to a meaningful response. Moreover, they failed to inform Arthur of "the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving." *See Commonwealth v. Williams.*[6]

The necessity for a full and adequate record was heightened for a cogent reason recognized during the trial by the

---

[5] Compare *United States v. Anderson,* 704 F. (2d) 117 (3d Cir. 1983); *State v. Olivera,* 53 Hawaii, 551, 497 P. (2d) 1360 (1972); *Kennedy v. State,* 271 Ind. 382, 393 N. E. (2d) 139 (1979) with *United States v. Delgado,* 635 F. (2d) 889 (7th Cir. 1981); *Krueger v. State,* 84 Wis. (2d) 272, 267 N. W. (2d) 602 (1978).

[6] 454 Pa. 368, 312 A. (2d) 597, 600 (1973).

Court itself, to wit, Arthur's mental retardation.

The murder for which Arthur is charged occurred prior to enactment of the 1986 Omnibus Crime Bill. However, at a point in the bench trial, counsel informed the Court that Arthur "waives any objection ... to the application of the 1986 Omnibus Crime Bill to him, and agrees that ... he would not be eligible for parole consideration until thirty years, were the court to impose a sentence of life...."

The trial judge's reaction to this proffer was one of extreme caution. Based upon medical evidence already presented he, appropriately, responded:

> COURT: Mr. Bruck, I feel like I should tell you what is in my mind with reference to this waiver. There has been a lot of allegations as to the—not competency, but the *ability of this Defendant to comprehend.* There has also been some indications that, perhaps he is easily persuaded. Before I would accept something like this, of course, I would want to question the Defendant, *but even my questioning of the Defendant gives me some concern too.* [Emphasis supplied.]

The colloquy which ensued with Arthur points up the propriety of the Court's conducting its own direct interrogation. Notwithstanding his statement that counsel had advised him in detail concerning the 1986 Act, it was obvious from his answers that Arthur failed to understand certain of its provisions. This simply underscores the peril inherent in the acceptance of waivers by criminal defendants. The peril is manifestly enhanced where the charge is death penalty murder, and the more so, when evidence of mental retardation is present. *See Patton, supra.*

By conducting his own thorough examination, the trial judge made a conscious effort to ascertain Arthur's comprehension of a waiver regarding parole eligibility. He should have done no less in determining the voluntariness of the far more critical waiver of a jury trial.[7]

---

[7] This Court has held in the recent case of *State v. Matthews*, _____ S. C. _____, 373 S. E. (2d) 587 (1988), that the 1986 Omnibus Crime Act may not be applied retroactively. The Act is referred to here for the sole purpose of illustrating the trial court's recognition of Arthur's impaired mental faculties, a determination which it did not make as to the waiver of a jury trial.

## CONCLUSION

Before accepting a proffered jury trial waiver in a criminal proceeding the trial Court must conduct its own direct and independent interrogation of the defendant. This insures that the waiver is, in fact, knowing and voluntary in protection of the defendant's rights. Moreover, it promotes judicial economy by foreclosing challenges to the validity of the waiver on appeal and in post-conviction relief proceedings. *See United States v. Cochran.*[8]

Reversed and remanded for resentencing.

GREGORY, C. J., HARWELL and FINNEY, JJ. and J. B. NESS, Acting Associate Justice, concur.

---

[8] 770 F. (2d) 850, 852 (9th Cir. 1985).