**STATE of Minnesota, Respondent,**

v.

**Montea Reginald ROSS, Appellant.**

**No. C4–90–2349.**

Supreme Court of Minnesota.

Aug. 2, 1991.

---

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant-appellant Montea Reginald Ross appeals his conviction of first degree murder after a bench trial in Hennepin County District Court. Defendant claims here that he did not understand the consequences of his jury trial waiver, and, therefore, he did not knowingly and intelligently waive his right to a jury trial. We affirm.

On the late evening of April 11, 1990, defendant Ross confronted the victim, Terry Gibson, over an $80 debt at a bar located near the corner of Lake Street and Stevens Avenue, Minneapolis. The argument continued off the bar's property, moving first onto Lake Street and then to a parking lot adjacent to the bar, eventually escalating into a fight. Gibson repeatedly punched defendant, knocking him down several times. After friends of the defendant and Gibson intervened, the fight broke up and the crowd, which had grown to about 50 people, dispersed to watch a second fight in an adjacent parking lot. Testimony indicates that defendant Ross left the scene, saying, "I'll be back, I'll be back." Ross returned shortly thereafter with a gun and again exchanged some words with Gibson. There was testimony that defendant Ross then shot Gibson several times, hesitated, then shot him several more times. Four

bullet wounds were found on Gibson, one of which was fatal.

Five eyewitnesses identified defendant Ross as the person who fired the shots. Four individuals, including an off-duty Minneapolis police officer and two ambulance drivers, also witnessed the shooting and observed the flight of the assailant down Stevens Avenue. While these four individuals were unable to identify defendant as the assailant, their description of the assailant's clothing matched the description given by the other eyewitnesses. The police officer further testified that he believed the assailant was the same individual he saw fighting earlier.

Two days after the shooting, on April 14, 1990, the defendant was arrested. A friend of the defendant, Andre Davis, was with him at the time and was also arrested. Both gave a statement to the Minneapolis police. Defendant denied shooting Gibson. Davis stated at the time of his arrest, and later testified at trial, that Ross told him that he (Ross) had shot someone.

On September 10–11, 1990, a *Rasmussen* hearing was held in which various issues relating to the trial were argued. On September 11, as the judge and counsel were preparing for jury selection, the defendant asked to speak to defense counsel. Thereafter defense counsel advised the court that his client wished to waive a jury trial, and the trial judge then engaged in a colloquy with the defendant. The court asked the defendant if he understood that he had a right to a jury of twelve persons ["Yes. I do"]; if anybody had coerced or pressured him into waiving his right to a jury trial ["No, they haven't"]; whether he had an education ["I've got my GED"]; if it was correct that he had adequate time to discuss the matter with counsel ["Yes, it is"]; and if it was still his decision to waive his right to a jury trial even though his counsel had advised him against waiving a jury ["Yes, it is"]. The trial judge also asked defendant if he would like a different judge to hear his case, and defendant said that he did. Finally, in response to the prosecutor's inquiry about a written waiv-

er, the judge responded he was satisfied with the oral discussion on the record.

The trial judge then accepted defendant's waiver and assigned the trial to another judge. At the commencement of the bench trial, the second judge, then presiding, again inquired if defendant was waiving a jury trial and the defendant confirmed that he was. The defendant was then tried and convicted of first degree murder and sentenced to life in prison.

Under both the United States and Minnesota Constitutions, the defendant was entitled to trial by jury. U.S. Const. art. III, § 2, clause 3, and amend. VI; Minn. Const. art. 1, §§ 4 and 6. Minn.R.Crim.P. 26.01, subd. 1(2)(a), provides, however, that this right can be waived by the defendant personally either in writing or, as here, orally on the record "after being advised by the court of his right to trial by jury and after having had an opportunity to consult with counsel." (Subsection (2)(b) of the same rule governs waiver when there is prejudicial publicity.)

Our cases require waiver of a jury trial to be knowing, intelligent and voluntary. *State v. Pietraszewski*, 283 N.W.2d 887, 890 (Minn.1979). The trial court must be satisfied that "the defendant was informed of his rights and that the waiver was voluntary." *Id.* This has long been the rule in federal cases as well:

> And the duty of the trial court in this regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

*Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930).

In this case, the defendant contends the trial court, in its colloquy with the defendant, failed to ask the "searching questions" needed to determine whether the defendant understood the consequences of his waiver. Absent an inquiry into why he wanted to waive his right to a jury trial, the defendant argues, the waiver falls

short of the knowing and intelligent standard.

We believe the trial court's inquiry in this case provided an adequate basis for granting the defendant permission to waive his right to a trial by jury.

The purpose of the trial court's colloquy with the defendant is to learn whether the defendant's waiver is knowingly and voluntarily made. The focus of the inquiry is on whether the defendant understands the basic elements of a jury trial. *Commonwealth v. De George*, 506 Pa. 445, 449, 485 A.2d 1089, 1091 (1984); *State v. Arthur*, 296 S.C. 495, 374 S.E.2d 291, 293 (1988). There is no need, however, for the defendant to have "an exhaustive knowledge of all the doctrinal subtleties of Sixth Amendment jurisprudence." *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1179–80 (7th Cir.1983).

 In *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir.1981), the Seventh Circuit thought the defendant should be told that a jury trial is composed of 12 members of the community, that the defendant may participate in the selection of the jurors, that the verdict of the jury must be unanimous, and that, if the defendant waives a jury, the judge alone will decide guilt or innocence. These are helpful guidelines and we commend them to the trial courts. *See also State v. Johnson*, 354 N.W.2d 541, 543 (Minn.App.1984) (giving the *Delgado* explanations is preferable although they are not mandated). The nature and extent of the inquiry may vary with the circumstances of a particular case. In *Delgado*, for example, the trial judge asked the defendant, a Cuban immigrant unfamiliar with English, only the most perfunctory questions; the jury waiver was held to be ineffective and the case was remanded for a new trial.

Defendant argues the court should have asked him *why* he wanted to waive a jury. We do not think this advisable or prudent. It is not the judge's function to explore with the defendant an evaluation of the merits of his case; matters of trial strategy and tactics should be left to the defendant and his counsel. For the court to intrude in this sensitive area might infringe on attorney-client privileged communications or compromise the judge's impartiality.

We are satisfied that defendant Ross made a valid waiver of his right to a jury trial. He is not unfamiliar with the judicial system, having been convicted once of robbery and twice for first degree burglary (although whether by plea or trial is not clear). He was advised by the court of the essential characteristics of a jury trial. While he was not told that the jury's decision had to be unanimous, we do not find that omission to be critical here. Finally, defendant had ample opportunity to consult with his attorneys who presumably also told him about the pros and cons of a jury trial.

Affirmed.