STATE OF MINNESOTA

IN SUPREME COURT

A11-2319

Court of Appeals                                                                 Page, J.
                                    Concurring in part, dissenting in part, Stras, J.

State of Minnesota,

              Respondent,

vs.                                                               Filed:  August 13, 2014
                                                               Office of Appellate Courts

Antoine Rumel Little,

              Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County
Attorney, Rochester, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant
Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Existing case law plainly requires a court to obtain a renewed jury-trial

waiver when the State amends its complaint to add an additional charge after the

defendant has made an initial jury-trial waiver.

2.      Defense counsel's statement regarding an earlier jury-trial waiver did not

satisfy the personal waiver requirements of Minn. R. Crim. P. 26.01.

1

3.     On the record presented, the district court committed plain error that affected appellant's substantial rights and which we must address to protect the fairness and integrity of the judicial proceedings.

Reversed and remanded.

O P I N I O N

PAGE, Justice.

This case presents the issue of whether a defendant who has waived his right to a jury trial must renew that waiver when the State subsequently amends the complaint to add a new charge.  Appellant Antoine Rumel Little was found guilty of one count of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(e)(i) (2012), one count of third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(b) (2012), and one count of fourth-degree criminal sexual conduct, in violation of Minn. Stat. § 609.345, subd. 1(b) (2012).  As relevant to this appeal, Little argues that the district court committed reversible error when it failed to obtain his personal jury-trial waiver on the first-degree criminal sexual conduct charge.  The court of appeals affirmed Little's first-degree criminal sexual conduct conviction.  For the reasons discussed below, we reverse the court of appeals, vacate Little's conviction for first-degree criminal sexual conduct, and remand to the district court for further proceedings consistent with this opinion.

In the winter of 2010 the victim, 14-year-old S.M.L., was introduced to Little. Sometime in early February, S.M.L., her sister, Little, and several others, were smoking marijuana and drinking alcohol in a Rochester apartment.  Around 1 a.m., S.M.L. went to

2

sleep in one of the apartment's two bedrooms. In the middle of the night, Little got into bed with S.M.L. and began groping her. When Little proposed that the two have sex, S.M.L. refused. Little then inserted his penis in S.M.L.'s anus. S.M.L. told Little to stop several times. After 5 to 10 minutes he finally stopped. After the encounter, S.M.L. went to the bathroom to check to see if she was okay and found blood on the toilet paper. Several days later, S.M.L. told a friend of her sister and her cousin about the encounter. This information made its way to S.M.L.'s mother, who confronted S.M.L. S.M.L. told her mother what had happened, and her mother reported the assault to the police.

On July 8, 2010, the State filed a complaint against Little charging him with third- and fourth-degree criminal sexual conduct. At a pretrial hearing on January 20, 2011, Little waived his right to a jury trial during the following colloquy:

> THE COURT: Mr. Little, your attorney has indicated that you want to waive your right to have a trial by jury, is that correct?
>
> LITTLE: Yes, sir.
>
> THE COURT: And you understand that if you have a trial by jury that— that under the law you're presumed innocent and that the State has the burden of proving you guilty beyond a reasonable doubt?
>
> LITTLE: Yes, sir.
>
> THE COURT: And that they have to convince twelve jurors that you are guilty beyond a reasonable doubt and they have to convince them of that with respect to each and every element of the offense?
>
> LITTLE: Yes, sir.
>
> THE COURT: And that if you waive that right to have a jury trial, the— the presumption of innocence and the burden of proof of beyond a reasonable doubt remain in place but then the—the State only has to

3

convince one person, that is the judge who will hear the case, that you're guilty, you understand that?

LITTLE: Yes, sir.

THE COURT: And it is your right to waive that and to have this tried to the Court, do you understand that?

LITTLE: Yes, sir.

THE COURT: And is that what you've decided to do?

LITTLE: Yes, sir.

THE COURT: And you've consulted with your attorney about the wisdom of that and the consequences of doing it?

LITTLE: Yeah.

THE COURT: And you've weighed your options in terms of having the jury trial versus having a court trial?

LITTLE: Yes, sir.

THE COURT: And—And it's your own free and voluntary decision then to waive your right to a jury trial and ask that this be tried to the Court?

LITTLE: Yes, sir.

THE COURT: And no one's threatened you or coerced you or forced you to do that, have they?

LITTLE: No, sir.

THE COURT: And you're not doing this just because you're in custody and you think it might make things go faster, are you?

LITTLE: Yeah, in a way.

THE COURT: You're doing it because of that or you're not?

LITTLE: No, no, no.

THE COURT:  All right. You just decided it's in your best interest to try this to the Court rather than to a jury, is that correct?

LITTLE:  Yeah.

On February 1, 2011, the State filed an amended complaint adding the first-degree criminal sexual conduct charge.  Little never personally received a copy of the amended complaint.  At a hearing on February 2, 2011, the court asked counsel whether a record had been made of Little's jury-trial waiver.  Both defense counsel and the prosecutor indicated that a record had been made at an earlier pretrial hearing.  Little did not personally, either in writing or on the record, waive his right to a jury trial on the amended charge of first-degree criminal sexual conduct at the hearing on February 2 or at any other time.  Indeed, during his presentence investigation, Little stated that he did not know the State had added the first-degree criminal sexual conduct charge until he was found guilty.  The trial took place on February 3, 2011, with the court serving as fact-finder.  The State called four witnesses:  S.M.L., two law enforcement officials who had interviewed S.M.L., and a physician assistant who had examined her.  Little was the defense's only witness.  At the conclusion of the trial on February 4, the district court found Little guilty of all three counts.  Little filed a post-trial motion for a new trial.  The district court denied the motion and sentenced Little to 153 months in prison.

On appeal to the court of appeals, Little argued that the district court erred when it failed to obtain a personal waiver of his right to a jury trial on the charge of first-degree criminal sexual conduct.  *State v. Little*, A11–2319, 2013 WL 599142, at *1 (Minn. App. Feb. 19, 2013).  The court of appeals affirmed Little's first-degree criminal sexual

5

conduct conviction.  *Id.* at *5.  Reviewing Little's claim for plain error, the court held that the district court did not err because there is no "precedent that requires a district court to obtain a renewed jury waiver if the state amends the underlying complaint."  *Id.*

I.

Before our court, Little renews his argument that the district court erred when it failed to obtain a personal waiver of his right to a jury trial after the State amended the complaint to include the charge of first-degree criminal sexual conduct.  We agree. Under both the United States and Minnesota Constitutions, a defendant is entitled to trial by jury.  U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Minn. Const. art. 1, §§ 4, 6.  In Minnesota, the right to a jury trial attaches whenever a defendant is charged with an offense that has an authorized penalty of incarceration.  Minn. R. Crim. P. 26.01, subd. 1(1)(a); *see also State v. Weltzin*, 630 N.W.2d 406, 410 (Minn. 2001).  Defendants may waive their right to a jury trial, but the waiver must be knowing, intelligent, and voluntary.  *State v. Dettman*, 719 N.W.2d 644, 651 (Minn. 2006) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  Absent such a waiver, a criminal defendant must be tried by a jury.  *See State v. Ross*, 472 N.W.2d 651, 653 (Minn. 1991).  Whether a waiver of a constitutional right was knowing, intelligent, and voluntary depends on the facts and circumstances of the case, including the background, experience, and conduct of the accused.  *State v. Rhoads*, 813 N.W.2d 880, 884 (Minn. 2012).  Moreover, the Minnesota Rules of Criminal Procedure require that a defendant personally waive the right to a jury trial, either in writing "or on the record in open court."  Minn. R. Crim. P. 26.01, subd. 1(2)(a).

Little acknowledges that the district court obtained a personal waiver of his right to a jury trial at the January 20, 2011, pretrial hearing. Nevertheless, he contends that the January 20 waiver does not extend to the charge of first-degree criminal sexual conduct because the State added the charge after that date. More specifically, Little argues that a waiver cannot be knowing and intelligent if the defendant does not know the relevant circumstances and consequences of the waiver. *See Brady*, 397 U.S. at 748 ("Waivers of constitutional rights . . . must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). According to Little, the relevant circumstances include the crimes with which he is charged.

The State argues that all a defendant needs to understand when waiving the right to a jury trial are the basic components of a jury trial. *See Ross*, 472 N.W.2d at 654. The State contends that because the amendment to the complaint adding the first-degree criminal sexual conduct charge here did not affect Little's understanding of the components of a jury trial and thus his right to a jury trial, a new waiver was not required.

For more than 100 years, we have held that a jury-trial waiver only applies to issues formed at the time of the waiver and not to issues added after the waiver. *McGeagh v. Nordberg*, 53 Minn. 235, 236-37, 55 N.W. 117, 118 (1893); *see also Wittenberg v. Onsgard*, 78 Minn. 342, 348, 81 N.W. 14, 16 (1899) ("Waivers of the right [to trial by jury] are always strictly construed, and are not to be lightly inferred, or extended by implication."). In *McGeagh*, the defendant waived his right to a jury trial on the plaintiff's claim that the defendant breached an express contract. 53 Minn. at 236, 55 N.W. at 118. After the waiver, the plaintiff amended the complaint to allege that the

7

parties had made an implied contract. *Id.* The defendant demanded a jury trial on the amended pleadings, which the district court denied. *Id.* We concluded that the defendant was entitled to have a jury hear the additional claim. *Id.* at 236-37, 55 N.W. at 118. We reasoned that "[a]ll that defendant waived was a jury trial of the issues then formed, and not of any and all other issues that might possibly be thereafter formed under amended pleadings, and which he could not anticipate." *Id.* at 237, 55 N.W. at 118.

We recognize that the jury-trial-waiver issue in *McGeagh* arose in the context of a civil case. But the State has not articulated, nor can we discern, any reason why our reasoning in *McGeagh* should not apply with equal force to criminal defendants, who are generally given greater procedural protections than parties in civil proceedings. *See Turner v. Rogers*, ___ U.S. ___, 131 S. Ct. 2507, 2516 (2011) (noting that states may provide fewer procedural protections in civil contempt cases than in criminal cases). Additionally, we have recognized that when defendants decide whether to waive their right to a jury trial they consider more than the procedural differences between jury trials and bench trials. *Ross*, 472 N.W.2d at 654. For example, defendants consider the merits of their case and trial strategy. *Id.* They also consider the likely sentence. In considering these issues, defendants must know the charges they face. We therefore expressly state what our previous case law makes obvious: when the State amends the complaint after a defendant's jury-trial waiver, the district court must obtain a renewed waiver of the defendant's right to a jury trial on the newly added charge.

8

## II.

Having concluded that a renewed jury-trial waiver was required in this case, we next consider the State's argument that Little validly waived his right to a jury trial on the first-degree criminal sexual conduct charge at the February 2 pretrial hearing. The State's argument relies on defense counsel's statement that a record had been made of Little's waiver "last Thursday at the pre-trial." Our rules, however, explicitly state that a "defendant . . . may waive a jury trial on the issue of guilt *provided the defendant does so personally*, in writing or on the record in open court." Minn. R. Crim. P. 26.01, subd. 1(2)(a) (emphasis added). Because the statement relied on by the State came from Little's attorney—not Little himself—the statement does not satisfy the requirements of Minn. R. Crim. P. 26.01. We therefore conclude that the district court erred when it failed to obtain a personal waiver of Little's right to a jury trial on the first-degree criminal sexual conduct charge.[1]

## III.

Because the district court erred when it failed to obtain a personal waiver of Little's right to a jury trial on the first-degree criminal sexual conduct charge, we must consider what, if any, relief is appropriate. Little contends that forfeiture and plain error analysis do not apply to the requirement that defendants affirmatively waive their jury-trial rights. The State argues that, because Little failed to object, the error is subject to

---

[1] We also note that the pretrial hearing to which defense counsel referred occurred before Little was charged with first-degree criminal sexual conduct. Because Little had not yet been charged with first-degree criminal sexual conduct, he could not have waived his right to a jury trial on that charge.

plain error review. The State further contends that the error was not a plain error that affected Little's substantial rights, and, therefore, Little is not entitled to a new trial on the first-degree criminal sexual conduct conviction. Because we conclude that Little is entitled to a new trial on the first-degree criminal sexual conduct offense, under plain error analysis, we need not resolve the parties' dispute regarding the appropriate review standard.[2] *See Hooper v. State*, 838 N.W.2d 775, 786 n.1 (Minn. 2013) (explaining that the court did not need to decide whether the harmless error or plain error standard applied because the defendant was entitled to relief under either standard). Under the plain error standard, we consider whether there was (1) an error (2) that was plain (3) that affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Even if all of these prongs are met, we only address the error if it seriously affects the fairness and integrity of the judicial proceedings. *Id.*

Having already concluded that the district court erred, we next turn to whether the error was plain. An error is "plain" if it is clear and obvious at the time of appeal. *Id.* at 741. An error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). "It is well established that a defendant's waiver of his right to a jury trial on the elements of an offense must be knowing, intelligent, and voluntary." *State v. Dettman*, 719 N.W.2d 644, 651 (Minn. 2006) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). For more than 100 years

---

[2]     Little contends that *State v. Osborne*, 715 N.W.2d 436, 442-43 (Minn. 2006), and *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012), support his standard of review argument. The State cites *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996), in support of its standard of review argument.

we have adhered to the rule that a civil defendant's jury-trial waiver only applies to "issues then formed, and not of any and all other issues that might possibly be thereafter formed under amended pleadings." *McGeagh v. Nordberg*, 53 Minn. 235, 237, 55 N.W. 117, 118 (1893). The State has failed to articulate, nor can we discern, any reason why our reasoning in *McGeagh* should not apply with equal force to criminal defendants who, as we noted previously, are generally given greater procedural protections than parties in civil proceedings. Based on our existing case law, we conclude that the district court committed an error that was plain when it failed to obtain a personal waiver of Little's right to a jury trial on the first-degree criminal sexual conduct charge.

We now turn to the third prong of our plain-error analysis, whether the error affected Little's substantial rights. *Griller*, 583 N.W.2d at 741. An error affects substantial rights if "the error was prejudicial and affected the outcome of the case." *Id.* An error is prejudicial if there is a reasonable likelihood that the error had a significant effect on the proceeding. *Cf. State v. Powers*, 654 N.W.2d 667, 680-81 (Minn. 2003) (concluding that the defendant's absence from the motion hearing was not prejudicial because the defendant's presence would not have changed the outcome of the motion hearing); *State v. Moore*, 438 N.W.2d 101, 105 (Minn. 1989) (concluding that the omission of allegedly exculpatory evidence was not prejudicial because it did not affect the outcome of the proceeding).

Under the facts of this case, we conclude that there is a reasonable likelihood that the district court's failure to obtain Little's personal jury-trial waiver on the charge of first-degree criminal sexual conduct had a significant effect on the proceedings. The day

11

after the State amended the complaint, Little reached a plea deal with the State in which Little would plead guilty to third-degree criminal sexual conduct, and the State would agree to probation. Little ultimately rejected the plea deal despite the fact that he had initially suggested the deal. At the February 2 pretrial hearing, the district court asked counsel whether a record had been made of Little's jury-trial waiver. Defense counsel responded that a record had been made at the January 20 pretrial hearing. As previously noted, defense counsel's response did not serve as a personal waiver of Little's right to a jury trial on the first-degree criminal sexual conduct charge. Moreover, the newly added charge in this case significantly increased the range of potential punishment. Further, it is not even clear that Little was aware of the first-degree criminal sexual conduct charge before trial. He did not receive a copy of the amended complaint, and during the presentence investigation he stated that he did not know about the added charge until after he was found guilty. After trial, defense counsel stated that Little may not have had a full appreciation of what was happening in the days leading up to trial because everything was moving at "laser light speed." Based on these facts, we cannot assume that Little and his counsel fully discussed the advantages and disadvantages of waiving a jury trial on the significantly more serious charge of first-degree criminal sexual conduct.

The concurrence and dissent contends that Little cannot establish that the error affected his substantial rights because "Little has not offered any evidence on whether he would have sought a jury trial had he been properly informed of his rights." But this requirement would place Little in an impossible position for at least two reasons. First, the record on appeal is generally limited to the papers, transcripts, and exhibits entered in

12

the district court. Minn. R. Crim. P. 28.02, subd. 8; *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered."). Second, the concurrence and dissent's position would require Little to present evidence as to what he would or would not have done with respect to his jury-trial right on the amended complaint at a time when the record indicates that he did not know and was not informed that he had a choice and at a time when he claims he did not know about the amendment.[3]

The concurrence and dissent ultimately concludes that Little likely would have waived his right to a jury trial on the added charge, reasoning that the first-degree criminal sexual conduct charge involved the same underlying conduct as the existing charges. It is true that the conduct underlying both charges is the same. But, as Little

---

[3] The concurrence and dissent suggests that Little could have shown that there is a reasonable likelihood that he would not have waived his right to a jury trial by "submitt[ing] an affidavit stating that he would not have waived his jury-trial right had he known of the charge of first-degree criminal sexual conduct." While hindsight may be 20/20, such a self-serving affidavit would lack credibility. The fact is that, without knowing about the charge and without having been given the waiver advisory with respect to that charge by the district court, it is impossible for Little to establish what he would have done at the time. At most, Little can only speculate now about what he would have done then. We also note that because this case is on direct appeal, Little cannot at this point submit such an affidavit.

The concurrence and dissent also suggests that Little could have "pointed to evidence in the existing record that provided insight into his views regarding a jury trial." But given Little's lack of knowledge and the fact that the waiver advisory was not given, no record was or could have been made with respect to what he might have done had he been properly informed.

13

notes, the elements to be proved and the penalties are dramatically different.[4] In addition, as the concurrence and dissent notes, our focus is on "what the defendant *would* have done, not what we think the defendant *should* have done." *Infra* at C/D-10; *see also State v. Ross*, 472 N.W.2d 651, 654 (Minn. 1991) (noting that it is not the courts' role to explore matters of trial strategy and tactics). As noted above, the record here is silent and provides no reliable evidence suggesting that, had Little known of the amended charge, he would have waived his right to a jury trial. Accordingly, we conclude that, had the district court personally questioned Little about his right to a jury trial on the first-degree criminal sexual conduct charge in accordance with the requirements of Minn. R. Crim. P. 26.01, there is a reasonable possibility that Little would not have waived that right. Because we conclude that there is a reasonable possibility that Little would not have waived his right to a jury trial on the amended charge of first-degree criminal sexual

---

[4]    A third-degree criminal sexual conduct charge requires the State to prove sexual penetration, that the victim was between 13 and 16 years old at the time of the incident, and that the defendant is more than 24 months older than the victim. *See* Minn. Stat. § 609.344, subd. 1(b). First-degree criminal sexual conduct requires the State to prove sexual penetration, personal injury, and the use of force or coercion. *See* Minn. Stat. § 609.342, subd. 1(e)(i). The only overlap between the two offenses is the element of sexual penetration. Thus, in this case, the original charge focused on whether Little engaged in sexual penetration and the relative age of S.M.L and Little, while the amended charge of first-degree criminal sexual conduct focused on whether Little engaged in sexual penetration and whether he caused personal injury and used force or coercion. *Compare* Minn. Stat. § 609.344, subd. 1(b)*, with* Minn. Stat. § 609.342, subd. 1(e)(i).

The presumptive sentence for a defendant, like Little, with a criminal history score of three convicted of third-degree criminal sexual conduct ranges between 60 and 84 months. Minn. Sent. Guidelines 4.B. The presumptive sentence for a defendant with a criminal history score of three convicted of first-degree criminal sexual conduct ranges between 153 and 216 months. *Id.*

14

conduct, we also conclude that the district court's failure to obtain a waiver and then concluding Little's trial without a jury deprived Little of his right to a jury trial and was prejudicial. *See Dettman*, 719 N.W.2d at 655.

Having concluded that the error was plain and affected Little's substantial rights, we must consider whether reversal is required "to ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740. In *Griller*, we considered whether an improper jury instruction on an affirmative defense entitled the defendant to a new trial. *Id.* We concluded that a reversal was not required to preserve the integrity of judicial proceedings because granting the defendant a new trial would have been "an exercise in futility and a waste of judicial resources." *Id.* at 742. The same cannot be said in Little's case. Allowing Little to stand convicted of a much more serious offense when there is a reasonable likelihood that but for the district court's error he would not have waived his constitutional right to a jury trial on the newly added charge will adversely affect the public's confidence in the fairness and integrity of judicial proceedings. We therefore reverse the court of appeals, vacate Little's conviction for first-degree criminal sexual conduct, and remand to the district court for further proceedings consistent with this opinion.

## IV.

In summary, under our existing case law it is plain and obvious that when the State charges a defendant with an additional offense after the defendant has waived his or her right to jury trial, the court must obtain a new waiver before dispensing with a jury. In this case, the district court's failure to obtain a personal waiver of Little's right to a jury

15

trial on the first-degree criminal sexual conduct charge constituted a plain error that affected his substantial rights. Moreover, allowing the first-degree criminal sexual conduct conviction to stand would adversely affect the public's confidence in the fairness and integrity of judicial proceedings. As a result, we reverse Little's first-degree criminal sexual conduct conviction and remand for further proceedings consistent with this opinion.

Reversed and remanded.

# CONCURRENCE & DISSENT

STRAS, Justice (concurring in part, dissenting in part).

I join Part I of the court's opinion. I agree that the district court erred in this case when it conducted a bench trial of appellant Antoine Rumel Little on the charge of first-degree criminal sexual conduct without having first obtained a jury-trial waiver from him on that charge. I cannot agree, however, that we should remand for a new trial. Little has failed to establish prejudice from the violation; he has never once argued that he would have insisted on a jury trial had the district court conducted a proper waiver colloquy with him. On the record before us, therefore, I can only conclude that Little does not seek, nor has he ever sought, a jury trial on the charge of first-degree criminal sexual conduct. Accordingly, rather than remand for further proceedings, I would affirm the decision of the court of appeals.

## I.

The initial question presented by this case is whether we should review for harmless error or plain error in light of Little's failure to object when the district court failed to obtain a jury-trial waiver from him on the charge of first-degree criminal sexual conduct. The court sidesteps the question by concluding that, even under plain-error review—the less favorable standard for a criminal defendant on appeal—Little is entitled to relief. I would confront the question directly and conclude that we review unpreserved errors of this type for plain error rather than harmless error.

A.

If a criminal defendant objects to an error at trial, an appellate court generally applies the harmless-error standard and disregards any error that does not affect the defendant's substantial rights. *See State v. Matthews*, 800 N.W.2d 629, 633-34 (Minn. 2011); Minn. R. Crim. P. 31.01. The standard for showing harmlessness depends on whether the objected-to error rises to the level of a constitutional violation. *See State v. Morrow*, 834 N.W.2d 715, 729 n.7 (Minn. 2013). If the error is constitutional, the State bears the burden of showing that the error was "harmless beyond a reasonable doubt." *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009); *see also Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). But if the error does not give rise to a constitutional violation, as with many evidentiary errors, the standard is lower: a nonconstitutional error is harmless if it did not substantially influence the verdict.[1] *See Morrow*, 834 N.W.2d at 729 n.7; *see also State v. Davis*, 820 N.W.2d 525, 536 (Minn. 2012) (reviewing an ordinary evidentiary error to determine whether it substantially influenced the verdict).

In the absence of an objection at trial, an appellate court generally applies the more deferential plain-error standard in reviewing a claim of error. *See State v. Hill*, 801 N.W.2d 646, 654 (Minn. 2011); Minn. R. Crim. P. 31.02 ("Plain error affecting a

---

[1] As we explained in *State v. Shoen*, there appears to be some tension within our cases, and between our cases and federal cases, about whether the burden falls on the State or on the defendant to show that a properly preserved nonconstitutional error is harmless. 598 N.W.2d 370, 377 n.2 (Minn. 1999) (discussing cases).

substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention"); *cf.* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Although we sometimes say that a party "forfeits appellate consideration" of an unobjected-to error, the forfeiture is not absolute because such an error is still subject to plain-error review. *See State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006).

There are four major differences between the harmless-error and plain-error standards. First, as described above, the circumstances under which the tests apply are different. For harmless-error review to apply, the party claiming the error must have objected at trial or preserved the error in some other way. *See, e.g.*, *State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2011) (issue preserved by objection); *State v. Harbitz*, 293 Minn. 224, 226, 198 N.W.2d 342, 343 (1972) (issue preserved by pretrial motion); *see also* Minn. R. Crim. P. 31.01 ("Any error that does not affect substantial rights must be disregarded."). In contrast, plain-error review applies when the party seeking appellate relief has failed to properly preserve the error. *See, e.g.*, *State v. Matthews*, 779 N.W.2d 543, 548 (Minn. 2010); *see also* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court on motion for new trial, posttrial motion, or on appeal even if it was not brought to the trial court's attention.").

Second, the standards are different. To obtain relief under the harmless-error standard, an appellant must show only that (1) there was error; and (2) the error was not harmless. *See State v. Juarez*, 572 N.W.2d 286, 291 (Minn. 1997). To obtain relief under the plain-error standard, by contrast, an appellant must show that (1) there was

error; (2) the error was plain; and (3) the error affected substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If those requirements are met, then we will address the error only if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The other two key differences between the harmless-error and plain-error standards relate to the third requirement of plain-error review: whether the error affected substantial rights. Whether performing harmless-error or plain-error review, an appellate court must examine the impact of the error on the defendant's substantial rights. *See State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011). However, as stated above, on harmless-error review, the required showing changes depending on whether the error rises to the level of a constitutional violation. That is not true with respect to plain-error review. In a case involving unpreserved trial error, an appellate court evaluates whether there is a reasonable likelihood that the error had a significant effect on the verdict, regardless of whether the error resulted in a constitutional violation. *See State v. Kuhlmann*, 806 N.W.2d 844, 853 (Minn. 2011) (reviewing a constitutional error under the plain-error test to determine if the error "affected the outcome of the case"); *Griller*, 583 N.W.2d at 741 (applying the reasonable-likelihood standard in reviewing an unpreserved, nonconstitutional error). The final difference between the harmless-error and plain-error standards is that, under plain-error review, the burden of demonstrating prejudice generally falls on the party seeking relief. *See Davis*, 820 N.W.2d at 535. *But see State v. Hohenwald*, 815 N.W.2d 823, 834-35 (Minn. 2012) (placing the burden on

the State to show the absence of prejudice to the defendant in cases involving

prosecutorial misconduct).[2]

For an appellate court, deciding whether to conduct harmless-error review or

plain-error review is generally a simple task: the court need only ask whether the

defendant preserved the error by objecting to it at trial. Preserved errors are subject to

harmless-error review; unpreserved errors are subject to plain-error review.[3]

B.

In light of the general rule that an unpreserved error is subject to plain-error

review, the next question is whether to treat the error in this case differently. In *State v.*

*Osborne*, 715 N.W.2d 436 (Minn. 2006), we held that an error similar to the one that

---

[2]     In cases involving prosecutorial misconduct, we have applied a two-tiered approach to harmless-error review depending on the seriousness of the misconduct. *See State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974) (establishing a two-tiered approach to reviewing claims of prosecutorial misconduct based on its seriousness). However, in several cases, we have questioned the continued viability of *Caron*'s two-tiered approach to harmless-error review of prosecutorial misconduct. *See State v. Pendleton*, 759 N.W.2d 900, 911 n.3 (Minn. 2009); *State v. McCray*, 753 N.W.2d 746, 754 n.2 (Minn. 2008); *State v. Ramey*, 721 N.W.2d 294, 299 n.4 (Minn. 2006).

[3]     It is less clear how to evaluate unpreserved structural errors. Structural errors are a limited class of errors that qualify as " 'defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards.' " *Kuhlmann*, 806 N.W.2d at 851 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)). It is an open question in Minnesota whether unpreserved structural errors lead to the automatic reversal of a conviction. *Compare Johnson v. United States*, 520 U.S. 461, 466 (1997) (rejecting the argument that "the error [the appellant] complains of here is 'structural,' and so is" not subject to plain-error review under Fed. R. Crim. P. 52(b) even though the error was not preserved), *with State v. Brown*, 732 N.W.2d 625, 630 (Minn. 2007) ("Structural errors always invalidate a conviction whether or not a timely objection to the error was made."). Because I conclude—for reasons explained in Part II—that the error in this case is not structural, there is no need to resolve that question today.

occurred here—a defective jury-trial waiver—was not amenable to plain-error review. However, *Osborne* is distinguishable, and for the reasons set forth below, does not require us to depart from the general rule in this case.

In *Osborne*, we conducted harmless-error review of an erroneous failure to obtain a jury-trial waiver, despite the fact that the defendant had not preserved the error through an objection at trial. 715 N.W.2d at 441-46. *Osborne* involved a Sixth Amendment challenge to a sentence that included upward departures based on facts found by the district court rather than by a jury. *Id.* at 438. The defendant in *Osborne* had been sentenced before the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), and he had not raised a Sixth Amendment challenge to his sentence—a challenge that, at the time of his sentencing, we had consistently rejected. *Osborne*, 715 N.W.2d at 442. The State argued that we should review for plain error "because Osborne forfeited consideration on appeal of any *Blakely* violations by failing to preserve the error at sentencing." *Id.* at 441. We rejected the State's argument and reviewed for harmless error. *Id.* at 446.

Critical to our decision in *Osborne* was the unique posture of that case. In particular, we repeatedly emphasized that the defendant's failure to preserve the error was attributable, in substantial part, to the fact that any objection to the error would have been futile under prevailing case law from this court. *Id.* at 442. Thus, applying the plain-error standard under those circumstances would place the risk of failing to anticipate a change in the law, "then unknown to the parties," entirely on the defendant. *Id.* It would also encourage defendants to "continue, formalistically, to make motions or

objections based on arguments that we have repeatedly rejected as being without legal merit." *Id.* Under those circumstances, we concluded that it would be unfair, and inconsistent with the general principles underlying forfeiture, to apply the plain-error standard to the constitutional claim in *Osborne*.

Just 5 years later, in *State v. Kuhlmann*, we reviewed the identical error—an erroneous failure to obtain a jury-trial waiver—under the plain-error standard. 806 N.W.2d 844 (Minn. 2011). The State charged the defendant in *Kuhlmann* with crimes that required it to prove, as elements, the existence of Kuhlmann's prior convictions. *Id.* at 847. Kuhlmann's counsel stipulated to the prior convictions, and as a result, the district court did not instruct the jury on the prior-conviction elements. *Id.* In accepting the stipulation, the district court failed to obtain a personal waiver of Kuhlmann's right to a jury trial on those elements. *Id.* In deciding what standard to apply, we said:

> Kuhlmann never objected to the trial court's failure to obtain his personal waiver of his right to a jury trial on the previous-conviction elements of the charged offenses when it accepted his stipulation to those elements. Therefore, we conclude that the error should be reviewed for plain error.

*Id.* at 852.

The legal issue in *Osborne* and *Kuhlmann* was identical and the defendants in each case had failed to preserve the error through an objection. The key to understanding the differing analyses in the two cases is that, in *Osborne*, an intervening change in the law excused the defendant from failing to assert what would have otherwise been a futile objection before the district court. *See State v. Fleck*, 810 N.W.2d 303, 310-12 (Minn. 2012) ("clarify[ing] and harmoniz[ing]" three cases that reflected "some confusion" in

our case law).  Yet *Kuhlmann* reflects the general rule: absent an intervening change in the law, the failure to object to an error requires an appellate court to apply the plain-error standard.

Here, Little does not argue that any case, now overruled, or any statute, now amended, played any role in his failure to object to the defective jury-trial waiver at trial. Accordingly, I would conclude that *Osborne*, which involved an intervening change in the law, has no application here.  Instead, this case is subject to the general rule from *Kuhlmann*, and Little's failure to object to the defective jury-trial waiver means that we must review his claim for plain error.

## II.

Little claims that the district court erred when it failed to obtain a new jury-trial waiver from him after the State amended the complaint to add a charge of first-degree criminal sexual conduct.  This court properly evaluates Little's claim under the plain-error standard.  It also correctly concludes that the error in this case was plain.  Where I depart from this court's analysis is its conclusion that Little has somehow satisfied his "heavy burden" of showing that his substantial rights were affected without presenting *any* evidence of prejudice.  *Griller*, 583 N.W.2d at 741.

My analysis begins with an examination of the jury-trial right itself.  The right is personal to the defendant, but it is not absolute: it is subject to waiver when a defendant requests a bench trial or pleads guilty.  *See Spann v. State*, 704 N.W.2d 486, 491 (Minn. 2005).  In either situation, however, "a defendant must personally waive his or her right to a jury trial."  *Kuhlmann*, 806 N.W.2d at 848.  The error resulting from an improper

guilty-plea colloquy is similar to the error that occurs when a defendant agrees to a bench trial based on a defective waiver: in both situations, the defendant loses the right to a jury trial without the court having obtained a valid, personal jury-trial waiver from the defendant. In addition to the similarity of the errors, the potential prejudice is similar: both deprive a defendant of the ability to go forward with a jury trial.[4] Thus, it is logical that the showing of prejudice required for a defendant to obtain relief from a defective guilty plea on appeal is similar to the prejudice that a defendant who received a bench trial must show to receive relief based on a defective jury-trial waiver. *See United States v. Williams*, 559 F.3d 607, 611-12 (7th Cir. 2009) (assessing the validity of a defendant's jury-trial waiver by considering Supreme Court cases about defective guilty-plea colloquies).

Accordingly, cases addressing defective guilty pleas provide guidance regarding how to evaluate an unpreserved claim of error in the context of a defective jury-trial waiver. In *United States v. Dominguez Benitez*, the trial court had failed to advise the defendant before he pleaded guilty that he could not withdraw his plea even if the court

---

[4]     If anything, the potential prejudice from a defective guilty-plea colloquy is greater than the potential prejudice from the failure to obtain a personal waiver prior to the commencement of a bench trial. After all, as the Supreme Court has recognized, a guilty plea requires a defendant to waive three distinct constitutional rights: the right to a trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A waiver in the context of a request for a bench trial, by contrast, includes only one waiver: the right to a jury trial. If a defendant who gives up three constitutional rights after a guilty-plea colloquy must show prejudice, *see United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004), then surely a defendant who gives up only one of those rights based on a defective jury-trial waiver must also show prejudice.

rejected the government's sentencing recommendation. 542 U.S. at 79. The failure to advise the defendant of his inability to withdraw the plea violated Fed. R. Crim. P. 11, but because the defendant did not object to the error at trial, the Supreme Court reviewed for plain error. *Id.* at 76. The Court held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 83; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that the "prejudice" prong for ineffective-assistance-of-counsel claims based on advice given during plea negotiations turns on whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial"). In other words, the defendant must show a reasonable probability that, had the court conducted an error-free colloquy, the defendant would have gone to trial instead of waiving his jury-trial right by entering a guilty plea.

The relevant inquiry under *Dominguez Benitez* is what the defendant *would* have done, not what we think the defendant *should* have done. We cannot consider, for example, whether we would have done something different if we had been in the defendant's shoes. Courts must not "second-guess a defendant's actual decision; if it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish." 542 U.S. at 85. But if the record does not show a reasonable probability that the defendant would have gone to trial instead of pleading guilty absent the error, then the defendant was not prejudiced by the error.

The logic of *Dominguez Benitez* applies with equal force to the error in this case. In *Williams*, the United States Court of Appeals for the Seventh Circuit extended *Dominguez Benitez*'s approach to cases in which there has been a defective waiver, prior to a bench trial, of the defendant's jury-trial right. 559 F.3d at 612-13. As in this case, the defendant in *Williams* was convicted after a bench trial, and he challenged his conviction on appeal on the ground that he had not validly waived his jury-trial right. *Id.* at 608-09. In *Williams*, as here, the defendant did not challenge the validity of the waiver in the trial court. *Id.* Based on *Dominguez Benitez* and a related case, *United States v. Vonn*, 535 U.S. 55 (2002), the Seventh Circuit declared in *Williams* that there was "*no doubt* as to the standard of review that governs Williams'[s] claim, which of the parties bears the burden of proof, and what must be shown." *Williams*, 559 F.3d at 613 (emphasis added). Specifically, the court placed the burden on Williams to show "that he did not have a concrete understanding of his right to a jury trial, and that but for the trial court's failure to ensure he had that understanding, there is a reasonable probability that he would not have waived that right." *Id.*

*Dominguez Benitez* and *Williams* further establish that, contrary to Little's argument, a failure to obtain a jury-trial waiver is not structural error. A structural error has two essential characteristics: (1) the error affects the framework within which a trial proceeds, and (2) the error's effect on the proceedings is difficult to assess. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-51 (2006). Even if the error in obtaining a jury-trial waiver affects the framework in which a trial proceeds, *Dominguez Benitez* and *Williams* show that the error's effect on the proceedings is not difficult to assess. *See*

C/D-11

*Kuhlmann*, 806 N.W.2d at 852 (reasoning that the failure to obtain a jury-trial waiver on a single element of an offense was not structural error because it did not affect the constitution of the trial and the error in the case was not difficult to assess). After all, we need only answer the straightforward question of whether, absent the error, the defendant would have waived his right to a jury trial. *See Williams*, 559 F.3d at 614 ("[O]ne can assess the likelihood that [a defendant] would have stood on his right to a jury had he been properly admonished of his right.").

Admittedly, there is language in *Sullivan v. Louisiana* that suggests that any violation of a defendant's jury-trial right is structural error. 508 U.S. 275 (1993). The issue in *Sullivan* was whether a constitutionally deficient reasonable-doubt instruction to which the defendant had objected violated his Sixth Amendment right to a jury trial. *Id.* at 277-78. Once the Court concluded that a deficient reasonable-doubt instruction constituted error, the Court turned to the more difficult question of whether the error was subject to harmless-error review. *Id.* at 278-79. The Court said no, reasoning as relevant here that deprivation of the jury-trial right, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.' " *Id.* at 281-82. That statement, however, is consistent with the conclusion that the Sixth Amendment error in this case is not structural. Some Sixth Amendment violations, such as the violation in *Sullivan*, will have consequences that are "necessarily unquantifiable and indeterminate," and such violations are structural error because they affect the framework of the trial and their unquantifiable and indeterminate consequences will be difficult to assess. *See Gonzalez-Lopez,* 548 U.S. at 148-51. Other Sixth Amendment

violations, however, such as the violation that occurred in this case, will have consequences that are not difficult to assess. Indeed, that is precisely the conclusion we reached in *Kuhlmann* when we held that a similar error—the failure to obtain a jury-trial waiver on a single element of an offense—was not structural error and could be reviewed under the plain-error standard. *See Kuhlmann*, 806 N.W.2d at 851-52 ("We conclude that the trial court's failure to obtain [the defendant's] personal waiver of his right to a jury trial on the previous-conviction elements of the charged offenses does not amount to structural error.").

For its part, despite sidestepping the question of structural error, the court seems to agree with me that, to obtain relief under the plain-error standard, Little must show a reasonable likelihood that, but for the error, he would not have waived his right to a jury trial. In addressing that subject, the court "conclude[s] that, had the district court personally questioned Little about his right to a jury trial on the first-degree criminal sexual conduct charge in accordance with the requirements of Minn. R. Crim. P. 26.01, there is a reasonable possibility that Little would not have waived that right." But the court reaches this conclusion through a combination of improper burden-shifting and pure speculation.

The court asserts that "the record here is silent and provides no reliable evidence suggesting that, had Little known of the amended charge, *he would have waived* his right to a jury trial." (Emphasis added.) While the court's statement may be true, it reflects a decision to effectively shift the burden of proof to the State, rather than require Little to show that his substantial rights were affected by the error. Generally, on plain-error

review, a tie goes to the State because the defendant bears the burden of showing that the error has prejudiced him. *Williams*, 559 F.3d at 611 ("If the standard is plain error, then it is [the defendant] who bears the burden of production and persuasion, and *a silent record works to his detriment*." (emphasis added) (citations omitted)). Indeed, both *Dominguez Benitez* and *Williams* make clear that it is not the State's burden to show that Little *would have* waived his right to a jury trial; rather, it is Little's burden to show that he *would not have* waived his right to a jury trial. *See Dominguez Benitez*, 542 U.S. at 82 (noting that the burden of showing prejudice is on the defendant on plain-error review, even in cases in which there has been a defective waiver); *Williams*, 559 F.3d at 613 (explaining plain-error review).

Moreover, even if Little did not know that he was charged with first-degree criminal sexual conduct until after the bench trial, as the court notes, it does not follow that applying *Dominguez Benitez* and *Williams* places Little in an "impossible position," as the court claims. Rather, Little's burden is straightforward under *Dominguez Benitez* and *Williams*: he must show that there is a reasonable likelihood that he would not have waived his jury-trial right had the district court engaged in an error-free colloquy with him and fully advised him of the charges against him. He could have made such a showing in at least four different ways.

First, Little could have pointed to evidence in the existing record that provided insight into his views regarding a jury trial, such as, for example, whether he had expressed hesitancy, either to the court or to counsel, about waiving his jury-trial right before the bench trial began. *Cf. Dominguez Benitez*, 542 U.S. at 84-85 ("Relevant

evidence . . . included Dominguez's statement to the District Court that he did not intend to go to trial . . . .").  Second, when he moved for a new trial in the district court, Little could have submitted an affidavit stating that he would not have waived his jury-trial right had he known of the charge of first-degree criminal sexual conduct and engaged in an error-free colloquy with the court.  *See* Minn. R. Crim. P. 26.04, subd. 1(2) (2012) (permitting a defendant to submit an affidavit with a new-trial motion when "[p]ertinent facts . . . are not in the record").  Third, he could have asked the court of appeals to stay his direct appeal so that he could file a petition for postconviction relief, and in connection with the petition, he could have sought an evidentiary hearing to create a record on his jury-trial-waiver claim.  *See* Minn. Stat. § 590.04, subd. 1 (entitling a postconviction petitioner to an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief"); Minn. R. Crim. P. 28.02, subd. 4(4) ("If, after filing a notice of appeal, a defendant determines that a petition for postconviction relief is appropriate, the defendant may file a motion to stay the appeal for postconviction proceedings.").  Fourth, he could have asked the court of appeals or this court to exercise its discretion and remand the case to the district court for an evidentiary hearing on the question of whether he suffered prejudice from the district court's failure to obtain a valid jury-trial waiver from him.  *See State v. Krause*, 817 N.W.2d 136, 147-48 (Minn. 2012) (discussing cases in which we have remanded for an evidentiary hearing during a direct appeal).

Accordingly, the court is correct when it points out that "no record was . . . made" by Little, but it is wrong when it says that "no record . . . *could have been* made with

C/D-15

respect to what [Little] might have done had he been properly informed." (Emphasis added.) Little could have established such a record through at least four different routes, none of which he took.

Moreover, Little is not relieved of his burden to show prejudice just because his evidence might be "self-serving" and "lack credibility," which will often be the case when a criminal defendant has to create a record in order to obtain relief. *See, e.g.*, *Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013) (considering assertions made by a defendant in an affidavit supporting his request for postconviction relief and denying relief not because the affidavit was self-serving, but because it showed that the defendant's claim failed); *State v. Kaiser*, 469 N.W.2d 316, 317 (Minn. 1991) (concluding that a trial court "erred in refusing to let defendant testify in support of his contention that his attorney coerced the plea" and remanding for an evidentiary hearing). As we explained in *State v. Bergeron*:

> Modern rules of evidence have abolished the common law rule that defendants are disqualified from testifying on their own behalf because of incompetency or bias, i.e., self-interest. The objection that testimony is "self-serving" appears to be a variation on the objection that a defendant is incompetent to testify because of an "interest" or "bias" in the case. Simply put, this is not really a valid objection under the Minnesota . . . Rules of Evidence.

452 N.W.2d 918, 926 (Minn. 1990) (citations omitted). In fact, Little is in the best position to explain his own state of mind and the choices he would have made. He

> obviously has access to his own mental state and could have made a record in the district court as to what he did or did not understand about his right to a jury and whether he still would have waived a jury trial had he known all that he was entitled to know about that right.

*Williams*, 559 F.3d at 615. Yet without *any* evidence that Little would have done something different had he been properly advised of his rights and the charges against him, the plain-error standard requires us to deny relief. To the extent the court disagrees with my conclusion, its disagreement is with *Dominguez Benitez* and *Williams*, not with my application of the principles from those two cases to the facts of this case.

To supplement Little's inadequate showing of prejudice, the court substitutes speculation for evidence. To support its speculation, the court points to two facts: (1) the fact that "the newly added charge in this case significantly increased the range of potential punishment" and (2) the fact that "the elements" of first-degree criminal sexual conduct "are dramatically different" from the elements of third-degree criminal sexual conduct. But those facts, standing alone, cannot establish a reasonable probability that Little would not have waived his jury-trial right if he had been fully informed of his rights.[5] Indeed, if I were to engage in the type of speculation that the court does, I would

---

[5]    The court claims to decide this case narrowly by granting relief to Little under the plain-error standard without actually having to resolve whether the plain-error standard applies to the circumstances presented by this case. The court's approach, however, results in an unstated, but important, conclusion. To grant relief to Little, the court must effectively treat the error as structural. After all, the court presumes—without any factual basis—that Little suffered prejudice because his potential punishment increased when a charge of first-degree criminal sexual conduct was added to charges of second- and third-degree criminal sexual conduct. The court does not (nor does it purport to) evaluate the *actual* prejudice suffered by Little as a result of the error—which is the relevant inquiry for determining whether an error has affected a defendant's substantial rights, at least in the absence of structural error. *Compare Kuhlmann*, 806 N.W.2d at 853 (holding that the failure to obtain a jury-trial waiver on the prior-convictions element of the offense was not prejudicial because the defendant "never challenged the existence of his previous convictions" and "[t]he stipulation prevented evidence of his criminal history from being presented to the jury"), *with Dereje v. State*, 837 N.W.2d 714, 726-27 (Minn. 2013)

(Footnote continued on next page.)

guess that Little *would have* waived his jury-trial right after the State added the charge of first-degree criminal sexual conduct. If Little did not want a jury trial on second- and third-degree charges of sexually assaulting a 14-year-old girl—the type of crime that a jury is likely to consider repugnant—why would he want a jury trial on first-degree charges arising out of the same conduct? As charged in this case, first-degree criminal sexual conduct requires proof not only of sexual penetration, but also of personal injury and the use of force or coercion, Minn. Stat. § 609.342, subd. 1(e)(i) (2012)—elements that arguably make a jury trial *less desirable* for a defendant.

But in the end nobody really knows, because Little has not offered any evidence on whether he would have sought a jury trial had he been properly informed of his rights, and it is not our job to guess what Little would have done. Rather, under the plain-error standard, it is Little's job to shoulder the burden of showing that the error affected his substantial rights. Little has never even *argued* that he would have made a different decision, let alone offered any evidence on the point. Because Little has never expressed the slightest interest in having a jury trial, I would conclude that Little did not suffer any prejudice from the absence of a personal waiver of his jury-trial right. Accordingly, I would affirm Little's conviction of first-degree criminal sexual conduct.

(Footnote continued from previous page.)
(describing certain counsel-related errors as structural error in which prejudice "is presumed").